Nikki M. GOLUBA, Plaintiff–Appellant,

v.

The SCHOOL DISTRICT OF RIPON, a municipal corporation; and Roland Alger, Defendants–Appellees.

No. 94–2010.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1994.

Decided Jan. 11, 1995.

David Goluba (argued), Ripon, WI, for plaintiff-appellant.

Ronald J. Kotnik, David E. Rohrer, Peter A. Martin (argued), Lathrop & Clark, Madison, WI, for defendants-appellees.

Before FLAUM and KANNE, Circuit Judges, and WILL, District Judge.*

FLAUM, Circuit Judge.

Plaintiff Nikki Goluba filed a motion for civil contempt sanctions against the School District of Ripon and Roland Alger, principal of Ripon High School, for violations of a permanent injunction issued pursuant to a consent agreement between the parties. Goluba contended that the defendants had breached the agreement, which prevented the defendants from intentionally permitting or allowing prayers during graduation ceremonies at Ripon High School, when graduating students initiated a prayer shortly before the start of the 1993 ceremony. Because we agree with the district court that the defendants did not violate the injunction, we affirm the decision to deny Goluba's motion.

## I.

Prior to 1993, Ripon High School, a public school in Ripon, Wisconsin, had included invocations and benedictions in the form of prayers at its graduation ceremonies. The Ripon School District, which managed the high school, had typically invited local clergy to perform these prayers. The School Dis-

---

* The Honorable Hubert L. Will of the United States District Court for the Northern District of Illinois is sitting by designation.

trict discontinued the practice after the 1992 graduation.

The School District decided, however, in a resolution passed by the school board on February 9, 1993, to authorize two high school seniors to deliver an invocation and benediction at the May, 1993 graduation ceremony. On March 10, 1993, Nikki Goluba, a senior at Ripon High School, filed a suit against the School District and principal Roland Alger under 42 U.S.C. § 1983. Goluba sought to enjoin the inclusion of student-led religious prayer at the upcoming ceremony on the grounds that such conduct would violate the Establishment Clause of the First Amendment.[1]

On March 18, 1993, the school board rescinded the resolution. Eight days later, Goluba and the School District agreed to the entry of a permanent injunction prohibiting the School District from participating or actively involving itself in religious prayer at graduation. The injunction, issued by the district court on April 26, 1993, stipulated in pertinent part:

> IT IS HEREBY ORDERED that the defendant, the School District of Ripon, and its officers, agents, servants, employees and all of those persons in active concert or participation with it, shall be and hereby are, permanently enjoined and restrained from authorizing, conducting, sponsoring or *intentionally allowing or permitting* religious prayer to be conducted at school commencement proceedings.

(emphasis added).

On May 10, 1993, the school board held a meeting to reconsider the school prayer issue. By a 5–4 vote, the board passed the following resolution designed to implement the injunction:

> Any formal graduation exercises planned by the administration will emphasize secular commemoration of student course of study achievements and will not include a religious invocation or benediction or any other component reasonably interpreted as a school-sanctioned prayer activity.

---

1. "Congress shall make no law respecting an establishment of religion, ..." U.S. Const. amend. I.

Following the school board decision, two students who objected to the policy circulated a plan to recite the Lord's Prayer[2] at 1:55 p.m. on May 29, 1993, five minutes prior to the official start of the graduation ceremony. According to the record, School District officials did not learn of the plan until shortly before graduation. Alger did not learn of the students' plan until May 27, 1993, when a radio news reporter interviewed Alger and asked him about it. Alger replied that he was unaware of the scheme and did not know if it would conflict with the injunction.[3] The school superintendent, Michael Heckman, admitted hearing rumors about the plan but stated that he was not formally aware of it until he read a newspaper article about it on May 28. The school board president, Thomas Stellmacher, asserted that he never had prior knowledge of the students' intentions. In any event, no school official undertook any action prior to graduation in order to prevent the student-initiated prayer at the graduation ceremony.

Around 1:40 p.m. on May 29, 1993, Ripon High School's graduating seniors began assembling on the school's football field to prepare for the graduation processional. Shortly before 2:00 p.m., according to Goluba, one student began distributing leaflets containing the Lord's Prayer. Soon thereafter some members of the graduating class recited the prayer.[4] Goluba stated that she heard the prayer while the students recited it, although no one outside the graduating class appears to have noticed the recitation at the time it occurred. The rest of the graduation then proceeded uninterrupted.

On June 14, 1993, Goluba filed a motion for civil contempt against the School District. She argued that the School District had vio-lated the terms of the injunction by not intervening to prevent the students' graduation prayer. The district court rejected this argument and denied the contempt motion. 847 F.Supp. 242. This appeal followed.

## II.

We emphasize at the outset that this case is an appeal from a denial of a motion for civil contempt for the violation of an injunction. Accordingly, the terms of the injunction and not the words of the Establishment Clause control this case. While the background of Establishment Clause jurisprudence might aid an understanding of the injunction, this case concerns first and foremost the interpretation of a consent decree, not the First Amendment.

■ To win a motion for civil contempt, a party must prove "by clear and convincing evidence" that the opposing party violated a court order. *Stotler and Co. v. Able,* 870 F.2d 1158, 1163 (7th Cir.1989); *Hayden v. Oak Terrace Apartments,* 808 F.2d 1269, 1270 (7th Cir.1987). The district court "must be able to point to a decree from the court 'which sets forth in specific detail an unequivocal command' which the party in contempt violated." *Stotler,* 870 F.2d at 1163 (citations omitted). The district court does not, however, "ordinarily have to find that the violation was 'willful'" and may find a party in civil contempt if that party "has not been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Id.* (citations omitted). Because a consent decree is a form of contract, we typically review the district court's interpretation of the consent decree as we would its interpretation of a

---

**2.** The Lord's Prayer, a prayer taught by Jesus to the Disciples, appears in the Christian Bible at two places: a longer version contained in the Sermon on the Mount at *Matthew* 6:9–13, and a shorter version at *Luke* 11:2–4. Although not found in the biblical text, a doxology similar to that located at 1 *Chronicles* 29:11 was subsequently added to the prayer in some early Christian manuscripts and commentaries. *See* Bruce M. Metzger and Michael D. Coogan, eds., THE OXFORD COMPANION TO THE BIBLE 464 (Oxford, 1993). Almost all Christian churches in America use some variant of the Matthean version; most Protestant churches also include the doxology as a part of the prayer, while the Roman Catholic church does not. 7 ENCYCLOPAEDIA BRITANNICA (Micropaedia) 478 (15th ed. 1990). The record does not reveal which version of the Lord's Prayer the students recited at graduation.

**3.** A local radio station reported Alger as saying that the prayer would be a "lawful act." Alger denied making that statement.

**4.** The record does not reveal how many students recited the prayer.

contract: *de novo. South v. Rowe,* 759 F.2d 610, 613 (7th Cir.1985). Where, as in the present case, the district court oversaw and approved the consent decree, we will nonetheless give some deference to the court's interpretation. *Id.* at 613 n. 4.[5] Finally, where the district court has reviewed extrinsic evidence relating to the consent decree, we will review any factual findings on those points only for clear error. *Id.* at 613.

■ The crux of the present dispute is the meaning of the consent decree's "intentionally allowing or permitting" language. Goluba essentially argues that "intentionally" here includes the concept of "knowingly." Goluba points out that a person acts intentionally "if he desires to cause consequences of his act or he believes consequences are substantially certain to result." BLACK'S LAW DICTIONARY 810 (6th ed. 1990); *see also Heller Intern. Corp. v. Sharp,* 974 F.2d 850, 858 (7th Cir. 1992) (noting this definition of intent for the purposes of insurance contracts). She contends that School District officials knew about the prayer plan before it was effected and knew that if they did nothing the plan would proceed. By failing to take action in the face of this knowledge, she concludes, the School District "intentionally" allowed prayer at a school graduation and violated the injunction.

The School District replies that "intentionally" in the context of the consent decree is better defined as "purposefully" or "deliberately." Even if they knew of the students plans, School District officials did not promote the plan or in any way try to sponsor or support the prayer. The School District argues it did not deliberately seek to include religious messages at graduation; at most, the School District knew what might happen and failed to prevent it. Therefore, the School District asserts, Goluba presented no facts showing that the School District "intentionally" allowed graduation prayer.

Ordinarily, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). However, we agree with the district court that in the instant case the consent decree is facially ambiguous; "intentionally" may have either meaning here. Where we cannot resolve that ambiguity on the basis of the decree's language alone, we "look at the evil which the decree was designed to rectify." *Armour,* 402 U.S. at 686, 91 S.Ct. at 1759 (Douglas, J., dissenting); *see also Alliance to End Repression v. City of Chicago,* 742 F.2d 1007, 1013 (7th Cir.1984) (*en banc*) (noting that "the overriding purpose in construing a contract is to give effect to the mutual intent of the parties at the time the contract was made"). As such, interpreting the decree requires understanding the context in which the decree was entered. *Cf. Alliance to End Repression,* 742 F.2d at 1013 ("[C]ontext, in the broadest sense, is the key to understanding language.").

■ An analysis of the events and cases that informed the entry of the consent decree reveals several relevant factors. First, the injunction explicitly forbade the invitation of an outside speaker to deliver graduation prayers. The Supreme Court specifically held in *Lee v. Weisman,* —— U.S. ——, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), that the Constitution prohibited these invitations. The School District's original decision to end its long-standing policy of inviting such graduation speakers, coming as it did on the heels of *Lee,* indicates an awareness of *Lee's* commands. Second, the events which followed the school board's vote to invite graduating students to lead prayers demonstrate that

---

**5.** The School District suggests that we go further and review the district court's decision only for abuse of discretion. The School District makes this argument by relying on our footnote in *South* to the effect that "where the district judge has overseen the litigation generated by the decree and the underlying dispute for an extensive period of time, his interpretation of the decree will be reversed only for an abuse of discretion."

759 F.2d at 613 n. 4; *Ferrell v. Pierce,* 743 F.2d 454, 461 (7th Cir.1984). Such a deferential standard of review is applicable where, as in *Ferrell,* the judge oversaw the consent decree for an extended period of time and the decree is particularly complex or intricate. In the instant case, the decree is neither complex nor intricate, nor was the dispute overseen for a great length of time.

the School District was also clearly on notice that it could not organize graduation prayers. Third, the school board's resolution implementing the injunction emphasizes the School District's plans and intentions for graduation. The resolution shows both that school officials knew that they themselves could not include such an activity in the ceremony and that they thought the injunction focused on their own activities. Finally, as the district court noted, the jurisprudence of the religion clauses walks a fine line in the public school context between preventing school officials from endorsing religion and permitting to students freedom of speech and the free exercise of religion. It is doubtful that in entering a consent decree to avoid one lawsuit, the school sought to invite another.[6]

These cases and circumstances indicate to us, as it did to the district court, that "purposefully" rather than "knowingly" better captures the meaning of "intentionally" in the consent decree. It was the active involvement of the School District in organizing graduation prayer that motivated the consent decree. The clear meaning of that decree was that the School District should not promote prayer at graduation. That was the obligation the School District undertook to enforce diligently and energetically. Whether Alger or other School District officials knew about a plan and did not act to stop it is therefore irrelevant for the purposes of a contempt sanction for violations of that decree.

▮ On the facts as presented, there is insufficient evidence to conclude that either Alger or other School District officials deliberately allowed or permitted prayer at graduation. All these officials denied seeing the incident at graduation, and Goluba presented no evidence to rebut those assertions. Indeed, Goluba made no showing that anyone outside the graduating class noticed the prayer while the students were reciting it. The fact that Alger and other School District officials had inklings of the prayer plan before graduation and did nothing to stop the prayer does not trigger the conclusion that they meant to encourage prayer at graduation.[7] Alger could have spoken with the students beforehand, but neither he nor anyone else was unequivocally required to do so by the terms of the decree.

Goluba, relying on our opinion in *Shakman v. Democratic Org. of Cook County*, 533 F.2d 344 (7th Cir.), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976), argues that a party subject to an injunction has an affirmative duty to ensure that those under the party's supervision comply with that injunction. In *Shakman*, a court order had prohibited the City of Chicago and its officers, agents, and employees from permitting political activity to be undertaken on public time or conditioning employment on "any political purpose." Subsequently, three Chicago supervisory employees solicited subordinates for the purposes of circulating petitions on behalf of Mayor Daley. The subordinates then moved for civil contempt sanctions against both their supervisors and the city. After an evidentiary hearing, the district court found one of the supervisors as well as the city in contempt. *Shakman*, 533 F.2d at

6. The School District argues that had it affirmatively policed the students, it would have violated the students' free speech and free exercise rights. That argument is somewhat misplaced. To the extent the injunction imposed unconstitutional obligations, the School District had the obligation to seek clarification or to challenge it in court, not to violate it. *Walker v. City of Birmingham*, 388 U.S. 307, 315–321, 87 S.Ct. 1824, 1829–32, 18 L.Ed.2d 1210 (1967).

7. Goluba contends that Alger endorsed the prayer when a Ripon radio station quoted Alger as saying that the student prayer would be a "lawful act." Alger denied saying that, insisting that he merely told the reporter he was uncertain whether the prayer would conflict with the injunction. The plaintiff did not rebut Alger's reply. We agree with the district court's ruling that we cannot read more into the evidentiary submission than that Alger spoke with a reporter and that he said he was uncertain. Consequently, the district court did not abuse its discretion in denying Goluba's motion for an evidentiary hearing, and its finding on this point was not clear error. While, as Goluba points out, issues involving a party's state of mind may not typically be appropriate for resolution without an evidentiary hearing, *Sarsha v. Sears Roebuck & Co.*, 3 F.3d 1035, 1037 (7th Cir.1993), no hearing is required where the nonmovant presents no additional facts from which a different state of mind might be inferred. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir.1989).

347–48. Along with other defenses, the city asserted that it could not be held in contempt for a city employee's violation because the city had ordered its employees to obey the injunction. The court dismissed the city's argument in a footnote, reasoning that "to absolve a large or small corporate defendant from its responsibilities simply because the corporation has ordered compliance but has not sufficiently policed same, would be to open the door for wholesale disobedience of the Court." *Id.* at 353 n. 13 (quotations and citations omitted).

However fitting the language of *Shakman* may seem, it does not apply to the present case. *Shakman* concerned the responsibility of a municipal entity for its employees and agents only. Had Alger invited students to lead graduation prayers and the School District had done nothing to stop him, we might have a case analogous to *Shakman.* The consent decree in the instant case addressed the School District and "its officers, agents, servants, employees and all of those persons in active concert or participation with it." The only evidence we have of intent to sponsor graduation prayer is the aforementioned action of certain students. There is nothing to suggest those students were in conspiratorial alignment with any of the other individuals listed in the consent decree.

Like the district court, we do not here "suggest that, having ostensibly foresworn religious prayer at commencement, school officials were free to then sit back and do nothing as students turned graduation into a revival meeting; inaction under such circumstances would almost certainly imply school officials' approval." Similarly, a continuing history of School District officials' sanctioning student-initiated prayer might demonstrate an intent to allow prayer under the terms of the decree.[8] As the Supreme Court held in *Lee,* religious exercises may not be conducted at a graduation where those who object to the prayer are induced to conform. *Lee,* —— U.S. at ——, 112 S.Ct. at 2661; *see also id.* —— U.S. at ——, 112 S.Ct. at 2664 (Blackmun, J., concurring) ("[I]t is not

enough that the government restrain from compelling religious practices: it must not engage in them either."); *see also, generally,* Comment, *Student–Initiated Religious Expression after* Mergens *and* Weisman, 61 U.Chi.L.Rev. 1565 (1994).

Conversely, we are not here implying that a school can prevent an individual student from engaging in unobtrusive private prayer at graduation. Appropriately restraining an individual from temporarily converting graduation into a prayer meeting is constitutional compliance; wilfully obstructing an individual from personally recognizing the religious implications of a momentous event in her life is impermissible interference.

Neither the School District nor Alger clearly violated the terms of the consent decree. We therefore hold that the district court properly denied Goluba's motion for civil contempt. For the foregoing reasons, we affirm the district court's decision.

AFFIRMED.

---

8. The School District noted at oral argument that the 1994 graduating senior class was told about the consent decree and was requested not to organize graduation prayers. This action appears to be an appropriate response to the dictates of the decree.