Honorable Brad Owen State Senator, 35th Legislative District P.O. Box 40482 Olympia, Washington 98504-0482
Honorable Peggy Johnson State Representative, 35th Legislative District P.O. Box 40600 Olympia, Washington 98504-0600
Honorable Tim Sheldon State Representative, 35th Legislative District P.O. Box 40600 Olympia, Washington 98504-0600
Dear Senator Owen and Representatives Johnson and Sheldon:
By letter previously acknowledged, you have requested our opinion concerning the following questions:
 1. Is it lawful to hold prayer at school commencement exercises, under Washington state law and the state constitution?
 2. Does any state law or the state constitution prevent prayer from being held at commencement exercises if the whole commencement program is organized by the student body?
 BRIEF ANSWER
The planned, organized inclusion of public prayer as a part of an official school commencement program by school officials has been held by the United States Supreme Court to be contrary to the federal constitution. The federal Court of Appeals for the Ninth Circuit (the circuit in which the state of Washington is located), has held that including public prayer in a commencement program would violate the First Amendment, whether the program is organized by school officers, by students or others. Because these federal courts have concluded the practice would violate the federal constitution, it is unnecessary to analyze whether the practice would also violate the state constitution.
The federal and state constitutions do not prohibit, and indeed protect, private prayers uttered during a commencement exercise by personal choice, so long as public officers have no involvement in such prayers or regulating their content, and subject to the school district's authority to maintain peace and order during the program. These conclusions are detailed in the analysis below.
 ANALYSIS FACTUAL ASSUMPTION
Before analyzing the relevant law, we note that our response to your questions is based on certain factual assumptions.
First, we assume your question relates to a commencement exercise conducted by a public school operated by a school district or by another state or local government entity. Schools operated by private parties are not, of course, subject to the constitutional provisions discussed in this opinion.
Second, we assume that the "commencement exercises" you refer to are official proceedings, organized by school officers and employees or by others designated for the purpose of carrying out an official school function: the presentation of diplomas, or other documents signifying completion of a course of studies or meeting certain educational requirements; and/or, the recognition by the district of student achievement. This definition would not include privately-organized ceremonies not planned by school officials or at their behest, not supported with public funds or property, and not constituting official school activities.
Third, we assume that the term "prayer" describes a form of speech with an explicitly religious content. For purposes of this opinion, we assume there is no such thing as a "nonreligious prayer."
 FEDERAL VERSUS STATE — THE CONSTITUTIONAL FRAMEWORK
Although you have specifically asked whether prayer at commencement exercises would be lawful as a matter of state law, this is an area in which federal and state law are so intertwined that we cannot answer your question without discussion of the United States Constitution and the cases construing it. Where there are parallel federal and state constitutional provisions, both applicable to a case, our state Supreme Court generally follows federal law, unless convinced that the language or historical context of the state constitution demands a separate analysis or different level of protection. See State v. Gunwall,106 Wn.2d 54, 720 P.2d 808 (1986).
Prayer at public school commencement exercises implicates both federal and state constitutional principles. The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" The United States Supreme Court has held that this provision, like others relating to federal constitutional rights, is applicable to state and local governments as well as to Congress because theFourteenth Amendment prohibits the states from abridging the privileges or immunities of citizens of the United States. See, e.g., Committee for Pub. Educ. Religious Liberty v. Nyquist,413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973).
Meanwhile, article 1, section 11 of the Washington Constitution provides, in part, that "[n]o public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or the support of any religious establishment." There is another provision in the state constitution relating specifically to schools. Article 9, section 4, provides that "[a]ll schools maintained or supported wholly or in part by the public funds shall be forever free from sectarian control or influence."
Confronted with these parallel but not identical provisions, the state Supreme Court has held that the state constitution requires a stricter standard than the federal with respect to the application of public funds or property to religious instruction. In Witters v. Commission for the Blind, 102 Wn.2d 624, 689 P.2d 53
(1984), a blind student applied for state aid pursuant to a state program offering training and vocational assistance, stating his intent to use the aid for a course of study preparing him to become a pastor, missionary, or church youth director. The state Supreme Court initially ruled that providing such assistance would violate the Establishment Clause in the First Amendment to the federal constitution. The court declined to consider state constitutional issues. Id. at 632. Witters successfully sought review of this decision by the United States Supreme Court, which reversed the state court holding in Witters v. Washington Dept. of Services for the Blind, 474 U.S. 481, 106 S.Ct. 748,88 L.Ed.2d 846, reh'g denied, 475 U.S. 1091
(1986). The United States Supreme Court held that it would not violate the federal constitution to provide aid to Witters, remanding the case to the state courts for further proceedings. On remand, the state Supreme Court, now analyzing state constitutional law, held that aiding Witters in obtaining religious instruction would violate article 1, section 11 of the state constitution and would not deny Witters any federal or state constitutional rights. The United States Supreme Court declined to review this second decision. Cert. denied,493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106, (1989).
The general holding of Witters is that the state constitution is stricter with respect to public support of religious activities than the federal constitution. State constitutional principles would be analyzed by our state Supreme Court only as to any activity not violative of the Establishment Clause of the federal constitution, which nevertheless may violate the more explicit language of the state constitution. Because the federal courts with jurisdiction in Washington have held inclusion of prayer at a public school commencement exercise would violate the United States Constitution, the state's constitutional issues are not reached.
 PRAYER AR COMMENCEMENT EXERCISES: ESTABLISHING A FACTUAL CONTEXT
You have asked whether the conduct of prayer at a school commencement exercise would be lawful. Because prayer could occur during the course of a commencement program in several different ways, we will analyze your questions by considering these four hypothetical situations: (1) Public prayers are given at commencement because the school officers responsible for the program have chosen to include the prayer and have invited one or more persons to deliver a prayer; (2) public prayers are given during commencement because school officials allowed students to plan part or all of the program, and the students have chosen to include prayer; (3) during commencement, the school provides an "open forum" time in which anyone may say what she likes, and one or more persons use this time to pray; and, (4) during commencement exercises, students (acting individually or in self-selected groups) engage in prayer, where such prayer has not been planned or sanctioned in any way by those responsible for organizing the event.
 CASE ONE: PUBLIC PRAYER PLANNED BY SCHOOL OFFICIALS
For this first hypothetical, there is a Supreme Court case directly on point. In Lee v. Weisman, 505 U.S. 577,112 S.Ct. 2649, 120 L.Ed.2d 467 (1992), a middle school principal, acting in accordance with a city policy, invited a local clergyman to deliver an invocation prayer and a benediction at middle school commencement. The principal provided the invited clergyman with a pamphlet recommending that he pray with "inclusiveness and sensitivity," (id. at 477), but did not otherwise influence the content of the prayers delivered.
In a challenge brought by one of the middle school students, the Supreme Court affirmed lower court decisions finding that graduation prayers were inconsistent with the Establishment Clause of the First Amendment to the United States Constitution. The Court saw the commencement prayer in question as one in which "[s]tate officials direct the performance of a formal religious exercise at promotional and graduation ceremonies for secondary schools." Id. at 480. The school principal's admittedly good intention to make the prayers nonsectarian and inclusive by sharing the pamphlet with the clergyman was viewed by the Court as compounding the school's constitutional error, as it entangled school officials in the business of deciding, not only that prayer would occur at an official school exercise, but in influencing the content of that prayer. Id. at 481-483. Finally, the Court rejected the argument that the prayer was acceptable because attendance at the commencement exercise was not mandatory and absence would not have jeopardized a student's record. The Court found that the prayer was still part of the official exercise, an example of state-sponsored religious activity, in which dissenting students would feel subtly coerced both to attend and to endorse (if only by their respectful silence) a religious statement planned and sponsored by public officers. Id. at 483-488.
As a relatively recent decision directly on point, Lee answers your first question in the negative insofar as a publicly operated school would contemplate planning and including prayer as an element of an official commencement exercise. Since such a practice would violate the federal constitution, there is no point in separately analyzing issues raised by the state constitution. Although, given the observations of both the state and United States Supreme courts in the Witters cases that state law is stricter than the Establishment Clause on this point, the result in all likelihood would be the same under a state law analysis.
 CASE TWO: PUBLIC PRAYER PLANNED BY THE STUDENTS
This issue is raised by your second question, but asks whether prayer can be included in commencement exercises if the exercises are entirely planned by the students (and has been the subject of public debate and of litigation since Lee). The United States Supreme Court has not directly ruled on this point, the appellate-level state courts have not considered this issue, and the federal circuits are divided. However, the federal Court of Appeals for the Ninth Circuit, which includes the state Washington, has held that prayer planned by the students is still "official" prayer if delivered as a part of an official commencement exercise, and therefore is still unconstitutional.
In Collins v. Chandler, 644 F.2d 759 (9th Cir. 1981), the court reviewed a practice of Chandler High School in Arizona of permitting prayers during school assemblies. The student council decided when to include prayers, selected students to deliver the prayers, and left the content of the prayer to the student chosen. The school principal was not specifically involved in the decision to have prayer, and played no role in determining its content, but approved the students' requests for prayer with the knowledge and concurrence of the district superintendent and its board of education. Attendance at the assemblies was voluntary.
The Ninth Circuit found this practice in violation of the Establishment Clause, reasoning that the overall responsibility of school officials for the conduct of the assemblies, plus their duty to monitor the meetings to keep order, practically made the school responsible for the decision to include prayer. Nor was the court moved by the fact that attendance at assemblies was voluntary, noting that [t]he Chandler students must either listen to a prayer chosen by a select group of students or forego the opportunity to attend a major school function. It is difficult to conceive how this choice would not coerce a student wishing to be part of the social mainstream and, thus, advance one group's religious beliefs.
Id. at 762. The court also rejected arguments that restricting the students in their choice to include public prayer was a violation of their free speech or free exercise of religion rights, and noting that its decision left students free to conduct individual or organized prayer before and after school, restricting only their ability to commandeer an official school function for their purpose.
Collins was followed and cited in a more recent Ninth Circuit decision, Harris v. Joint School District 241, 41 F.3d 447 (9th Cir. 1994). The Harris case involved a policy of the Grangeville School District in Idaho to allow the graduating class, by majority vote, to decide whether to have prayers at commencement and to select the persons delivering such prayers, if any. In addition to leaving the planning of the entire ceremony to the graduating seniors, the district even included a disclaimer on the commencement program, indicating that the district did not necessarily endorse the content of any speaker's remarks, but did endorse free exercise of speech and religion. Id. at 452-453.
The Ninth Circuit reversed a district ruling that the Grangeville policy was consistent with the Establishment Clause of theFirst Amendment, basing its reasoning primarily on Lee, supra and on the Collins case discussed above. The circuit court was unpersuaded that the student involvement in planning commencement made a constitutional difference. First, the court noted that the school retained full overall control over commencement, including the right to revoke its decision allowing the students to plan the ceremony. Second, the school paid for commencement with public funds. The court found that the school could not divest itself of responsibility for commencement by delegating the planning to the students. Finally, the court rejected the notion that the commencement exercise was an "open forum" involving the exercise of free speech and free exercise rights by the participants, because only those speakers selected by the students (with the concurrence of school officials) would have access to the podium.
The Supreme Court granted a writ of certiorari on the Harris case, and then vacated the judgment and directed that the case be dismissed for mootness. Joint Sch. Dist. 241 v. Harris, ___ U.S. ___, 115 S.Ct. 2604, 132 L.Ed.2d 849 (1995). Since the case was vacated for mootness alone, it is still the latest indication of the Ninth Circuit's views on the issue.
A Fifth Circuit case, Jones v. Clear Creek Independent School District, 977 F.2d 963 (5th Cir. 1992), took a different view. In that case, the court upheld a policy of the Clear Creek (Texas) school district permitting high school seniors to choose student volunteers to deliver nonsectarian, nonproselytizing prayers at graduation. The Fifth Circuit held that the primary effect of the Clear Creek policy was secular, that it did not excessively entangle government with religion, that it was not an endorsement of religion, and that it did not coerce participation of objectors. Decided just a few months after Lee, the Jones opinion took great pains to distinguish the Clear Creek policy from the policy struck down in Lee.
After reviewing these cases, we do not foresee that the Ninth Circuit would adopt the reasoning of the Jones case. The Ninth Circuit, which would likely review any case arising in this state, seems squarely of the opposite view. We think the courts would not permit even student-initiated public prayers during the course of public school functions.
 CASE THREE: PRAYER DURING AN OPEN PUBLIC FORUM
Where a school or government opens its facilities to a broad exercise of privately-chosen speech and association, the courts have held that religious speech must be allowed on the same basis as other speech. See, e.g., Board of Educ. of Westside Comm'ty Schs. v. Mergens, 496 U.S. 226, 110 S.Ct. 2356, 110 L.Ed.2d 191
(1990).
As noted above, the Ninth Circuit's Harris opinion concluded that a public prayer uttered or led by a person chosen by a vote of the graduating seniors was not an "open public forum" because it would not truly be open to all possible speakers or points of view, only those winning the majority vote of the graduates. To clarify our discussion, we have included a hypothetical commencement exercise in which, for instance, a school has an "open microphone" session during the commencement program in which any student could step to the podium and express his or her views, with no pre-clearance or regulation of the content of such comments. If there was such a practice, would it violate the law if one or more of the speakers, without any connivance by school officials, uttered a prayer or discussed religious matters? If truly conducted as an open forum, this practice might meet the standards laid down in Board of Educ. of Westside Comm'ty Schs., This case is based primarily on the "free speech" portions of the First Amendment.
Nevertheless, we doubt that an "open public forum" is likely to be adopted as a part of commencement exercises. To meet constitutional standards, school officials could play absolutely no role, direct or indirect, in determining who would speak or in regulating what would be said. Since a commencement ceremony is a formal occasion with a specifically-focused purpose, it seems almost certain that schools would decide to exercise some degree of control over the contents of the program. To the extent the school exercises that control, the occasion ceases to be an "open forum," as discussed in both Collins and Harris.
 CASE FOUR: UNPLANNED OR SPONTANEOUS PRAYER
Things do not always go according to plan. What if, during the course of a commencement ceremony in which the school neither planned for a prayer nor included any time for it, some person or group, with no foreknowledge on the part of the school, begins to pray? Something like this seems to have occurred in Goluba v. School Dist. of Ripon, 45 F.3d 1035 (7th Cir. 1994). In that case, a school district which had historically included prayer in its graduation ceremonies had entered into a consent agreement promising to discontinue the practice. Without the knowledge of the school, a number of students agreed to arrive in the hall five minutes before the ceremony was scheduled to begin and recite a Psalm together. The district court and circuit court both held that, under the circumstances, the school district had not violated the consent decree. However, the circuit court opinion does suggest that, to the extent a school knows in advance of a student's plan to "supplement" the planned graduation program with prayer, the school has some responsibility to keep order and prevent the uninvited prayer from disrupting the occasion. In other words, a school which looks the other way during prayer may find itself held responsible for what occurs, especially if the prayer disrupts the public program.
Of course, prayers can be silently or quietly spoken by students at graduation without interrupting the program, and none of the cases suggest that such personal, non-intrusive prayers are in any way unlawful. As to such speech, the school's only interest is in maintaining order during the ceremony. The final paragraph of the majority opinion in Lee makes it clear that the Court's holding is not based on hostility to religion, but upon the unconstitutionality of officially compelled religion.
Our society would be less than true to its heritage if it lacked abiding concern for the values of its young people, and we acknowledge the profound belief of adherents to many faiths that there must be a place in the student's life for precepts of a morality higher even than the law we today enforce. We express no hostility to those aspirations, nor would our oath permit us to do so. A relentless and all-pervasive attempt to exclude religion from every aspect of public life could itself become inconsistent with the Constitution. We recognize that, at graduation time and throughout the course of the educational process, there will be instances when religious values, religious practices, and religious persons will have some interaction with the public schools and their students. But these matters, often questions of accommodation of religion, are not before us. The sole question presented is whether a religious exercise may be conducted at a graduation ceremony in circumstances where, as we have found, young graduates who object are induced to conform. No holding by this Court suggests that a school can persuade or compel a student to participate in a religious exercise. That is being done here, and it is forbidden by the Establishment Clause of theFirst Amendment.
Lee, supra, 120 L.Ed.2d at 488 (citations omitted).
Private expressions of faith, then, individually or shared voluntarily among a group, are certainly constitutional. The legal questions arise not when people pray, but when public officers intentionally subject people to an "official" prayer which, because of the circumstances, gives the impression that the sentiments expressed represent the views of the administration.
We trust the foregoing will be of assistance to you.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
JAMES K. PHARRIS Senior Assistant Attorney General (360) 664-3027