In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3592

LaMont G. Bailey, et al.,

*Plaintiff-Appellants*,

*v.*

E. Mitchell Roob, Jr., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:94-cv-00089-SEB-JMS—**Sarah Evans Barker**, *Judge*.

Argued March 31, 2009—Decided June 8, 2009

Before Flaum, Manion, and Rovner, *Circuit Judges*.

Flaum, *Circuit Judge*.   Years ago, a group of plaintiffs and the Indiana Medicaid program's administrators agreed to certain terms for the handling of applications to the disability program in Indiana: most relevant for present purposes was a concession that the program would compile a complete twelve-month medical history before reaching a decision on the application. Now, several members of the affected class want to hold the

program administrators in civil contempt for violating that portion of the consent decree. They claim that in too many cases the program is relying on summary forms rather than compiling an applicant's complete medical history.

The district court rejected the motion because the plaintiffs had not demonstrated by clear and convincing evidence that the defendants were in violation of the terms of the consent decree. Appellants now challenge that ruling, citing three errors. First, they claim the district court improperly tasked them with demonstrating that the plaintiffs had not been reasonably diligent in following the demands of the consent decree. Second, they argue that the district court should have held that the evidence proffered below was a clear and convincing demonstration that the program administrators were violating the decree. Third, they argue that the district court erred as a matter of law by holding that 20 C.F.R. § 416.912(d), a provision of the regulations for the Supplemental Security Income disability program incorporated by reference into the consent decree, did not require a full collection of medical records.

For the following reasons, we affirm the district court's ruling.

## I. Background

The Medicaid for the Disabled program in Indiana provides medical coverage and benefits to individuals who suffer from a qualifying disability. The present case

grew out of a class action lawsuit filed against the Indiana Medicaid disability plan in the 1990s. That lawsuit was settled by a consent decree requiring the administrators of the plan to collect certain evidence before making a decision on an application for disability benefits. The consent decree required the Indiana plan to obtain and evaluate evidence used for Medicaid eligibility in the same way that the Code of Federal Regulations requires the Supplemental Security Income administrators to obtain and evaluate evidence. Specifically, the decree provided that, "the State of Indiana must obtain and evaluate evidence in determining Medicaid eligibility in the same way that Supplemental Security Income disability determinations are made under 20 C.F.R. 416.901 through 416.988."

In fact, the consent decree simply incorporated 20 C.F.R. § 416.901-416.988 as regulations for how the Indiana Medicaid program should go about collecting and evaluating applications. As the district court summarized it, the consent decree required the Indiana Medicaid program to do three things: First, obtain complete histories from a Medicaid applicant's treatment providers, covering at least the twelve months prior to the application, before making any determination about Medicaid eligibility; second, obtain additional medical information from an applicant's treating physician or other medical source when necessary; third, ensure that medical records are complete and detailed enough to allow for a proper determination regarding eligibility.

The Indiana Medicaid for the Disabled program is supposed to follow a defined set of procedures when

making eligibility determinations. Applicants for Medicaid for the Disabled first meet with an assigned caseworker. The caseworker helps an applicant fill out Form 251B, in which an applicant lists her medical conditions and any information about treatments she's received in the last twelve months, including her treating physicians. The caseworker is responsible for collecting an applicant's medical history based on the information provided in Form 251B. If the caseworker is unable to collect this information, he is supposed to note that in the applicant's file. After the caseworker has processed them, applications are forwarded to the Medicaid Medical Review Team (MMRT). The MMRT is responsible for gathering any information that the caseworker has not tracked down.

The Indiana Medicaid plan uses a Form 251A to collect information from a physician about an applicant's medical history. The Form 251A includes a section asking for information about the patient's treatments, diagnostic tests, and medications going back for at least twelve months, a "Medical Evidence" section asking for information on the patient's physical systems, and a "Diagnosis/Prognosis" section asking for the doctor's opinion regarding the applicant's reported impairment.

On April 13, 1999, plaintiffs filed a petition to hold the defendants in civil contempt for violating the terms of the consent decree. The parties settled by entering into a second consent decree that included the same terms as the original and allowed anyone who had been denied Medicaid benefits in the preceding three years to reapply for benefits.

Seven years later, on September 26, 2006, plaintiffs filed a second petition to hold defendants in civil contempt, alleging that the Indiana Medicaid program was again in violation of the consent decree. In response to a discovery request, the Medicaid administrators agreed to produce a representative sample of disability benefit applications. That sample consisted of twenty-six files in all, representing every application from Marion County, Indiana with an applicant whose last name began with "C" and whose application was denied between September 1, 2006 and October 1, 2006.[1] The parties judged twelve of these applications to be complete under any standard, but appellants contend that the remaining fourteen are incomplete and demonstrate the Indiana Medicaid program's violation of the consent decree.

Appellants contend that in some cases Indiana is improperly using this form as a proxy for the "complete medical history" required in 20 C.F.R. § 416.912. Appellees contend that the consent decree does not always require them to obtain copies of a physician's medical records and that Form 251A is a "complete" medical history within the meaning of the decree.

The district court conducted its own review of the files. It concluded that five of the fourteen allegedly incomplete

---

[1] This procedure raises some obvious concerns about sample size and concentration, but appellants contend that appellees stipulated that they would not raise those issues in defense of the action, and they have not.

files were complete under any standard. With respect to the remaining nine, the district court found that "[f]our of these nine applications are clearly less complete than the other five," and that the other five files contained only the summary Form 251A, but did not find the administrators of Indiana Medicaid in contempt for violating the consent decree. The crux of the district court opinion is that the appellants had not met the burden for a civil contempt petition: Neither side presented adequate evidence on what constituted a "complete" medical history, and thus neither the four arguably incomplete applications nor the five applications containing only the Form 251A was clear and convincing evidence that the appellees violated the consent decree. The district court invited the appellants to re-file their motion, asking them to produce "[e]xpert testimony, or information on how the agency charged with responsibility for compliance with the Decree interprets the definition Plaintiffs offer" and "factual explication of what precisely the Medicaid system instructs physicians to do and take account of in completing Form 251A." The appellants instead appealed the district court's denial of their motion to this court.

## II. Discussion

We review the district court's decision not to hold the state in civil contempt deferentially. "It is well established that the decision by a district court to enter a finding of civil contempt is discretionary and we review it only to determine if there was an abuse of discretion or its entry

was clearly erroneous." *Feltner v. Title Search Co.*, 283 F.3d 838, 841 (7th Cir. 2002). The case law on contempt sanctions divides them into two categories: coercive and remedial. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999). Coercive sanctions induce a party's compliance with a court order in the future, while remedial sanctions compensate an injured party for an opponent's past non-compliance. *Id.* The contempt petition here is coercive; the appellants were seeking to enjoin the Indiana Medicaid program to contract with an outside auditor to review its decisions every three months, and to record each and every instance in which a case-worker requests medical information from an applicant's medical care provider.

Appellants argue that the district court made three errors. First, it improperly placed upon them the burden of demonstrating that Indiana had not been reasonably diligent in carrying out the consent decree's requirements. They contend that reasonable diligence is an affirmative defense on which Indiana bears the burden of proof. Second, they argue that the district court abused its discretion by not imposing civil contempt sanctions because of the four applications that the district court characterized as less than complete. Third, they argue that the district court improperly declined to hold that the consent decree requires that Indiana obtain actual copies of a treating physician's medical records and thus that the five applications with only a Form 251A are evidence of Indiana's violation of a court order. We take each claim in turn.

### A. Whether the district court improperly allocated the burden of proof

The appellants first contend that the district court abused its discretion because it improperly placed on them the burden of proving that the appellees were not "reasonably diligent" in executing the consent decree. The district court characterized the burden of proof as, "whether Plaintiffs have shown, by clear and convincing evidence, that Defendants have not been 'reasonably diligent and energetic in attempting to accomplish what was ordered' in the Consent Decree." They contend that this was an error of law and necessarily an abuse of the district court's discretion. *See United States v. Jaderany*, 221 F.3d 989, 994 (7th Cir. 2000). Appellants contend that they need only show a violation of the terms of the consent decree; "reasonable diligence," they contend, is an affirmative defense on which the appellees' bear the burden of production.

Appellants cite *United States v. Rylander*, 460 U.S. 752 (1983), which they argue squarely places the burden of demonstrating reasonable diligence on the party defending against the contempt petition. *Rylander* does hold that a defendant in a contempt proceeding bears the burden of producing evidence if he is asserting a present inability to comply with the terms of a court order. *Id.* at 757. The defense that the Supreme Court discussed in *Rylander* is different from any defense that the state would present in the present case, however. In *Rylander*, the respondent was subject to an IRS summons ordering him to turn over certain corporate books and records to the

agency. *Id.* at 753. A prima facie case for contempt sanctions in that case consisted of a showing that Rylander had not satisfied the terms of the summons—that is, that he had not turned over the books and records. The Court held that Rylander could defend against a finding of civil contempt by demonstrating "that compliance is now factually impossible." *Id.* at 757. *Rylander* thus places a burden of proof on the defendant, but it does so when the defendant is alleging that "compliance is impossible." *Id.*

*Rylander* addressed a case where a party defending against a civil contempt petition for violating a court order requiring a one-time-only action on his part, but in doing so it did not address what evidence a party *seeking* sanctions must produce in the first instance. The parties agree that this circuit's case law requires the party seeking sanctions to demonstrate that the opposing party is in violation of a court order by clear and convincing evidence. *See, e.g., SEC v. Homa*, 514 F.3d 661, 676 (7th Cir. 2008). They disagree over what evidence a party has to produce to demonstrate an opponent's violation of a court order.

In *Goluba v. School Dist. of Ripon*, 45 F.3d 1035 (7th Cir. 1995), we noted when discussing civil contempt sanctions that, "[t]he district court does not, however, 'ordinarily have to find that the violation was "willful" ' and may find a party in civil contempt if that party 'has not been reasonably diligent and energetic in attempting to accomplish what was ordered.' " *Id.* at 1037 (citing *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989)). Appel-

lees contend that this passage places the burden of proof on this issue on the party seeking the contempt sanction; the appellants contend that their burden of proof is actually spelled out earlier in the same opinion, where the court noted that in order to prevail, "a party must prove 'by clear and convincing evidence' that the opposing party violated a court order." *Id.* (citing *Stotler*, 870 F.2d at 1163).

*Goluba* does not explicitly say which party bears the burden of demonstrating "reasonable diligence" or the absence thereof. Our discussion of "reasonable diligence" in that case refers to what a court must *find* rather than to what a party to the action must *prove*. However, *Goluba* spelled out what evidence must be before the court before it can impose sanctions: evidence that a party has willfully refused to comply with a court order, or evidence that a party was not "reasonably diligent" in carrying out the terms of the court order. We have subsequently used a test for civil contempt petitions that explicitly requires a petitioner to demonstrate that the alleged contemnor was not reasonably diligent. *See Prima Tek II, LLC v. Klerk's Plastic Industries, B.V.*, 525 F.3d 533, 542 (7th Cir. 2008) ("To sustain its contempt claim, PTII has the burden of proving all of the following elements by clear and convincing evidence: (1) the Order sets forth an unambiguous command; (2) Klerks violated that command; (3) Klerks's violation was significant, meaning it did not substantially comply with the Order; and (4) Klerks failed to take steps to reasonabl[y] and diligently comply with the Order.") (citing *Goluba* and *Stotler*). Likewise, the Supreme Court has discussed the

prima facie case in a civil contempt proceeding as the burden of showing a willful failure. *See McPhaul v. United States*, 364 U.S. 372, 379 (1960) ("The Government's proof at the trial thus established a prima facie case of *willful* failure to comply with the subpoena.") (emphasis added). At least one other circuit has used a similar phrase in elaborating the contempt standard, requiring that the evidence be sufficient to foreclose a finding of reasonable diligence. *See United States v. Local 1804-1, Int'l Longshoreman's Ass'n, AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995) ("In a civil contempt proceeding, like the present case, a contempt holding will fall unless the order violated by the contemnor is 'clear and unambiguous,' the proof is 'clear and convincing,' and the contemnor was not reasonably diligent in attempting to comply."). Thus, the district court did not commit a clear legal error by requiring appellants to demonstrate Indiana's lack of reasonable diligence.

Furthermore, we could reject the contention that the district court erred in stating the burden of proof because it is not clear from reading the opinion that the district court actually placed the burden of demonstrating the lack of reasonable diligence on appellants. The statement quoted above certainly suggests that the court required as part of the prima facie case evidence that the appellants had not been reasonably diligent. However, the district court ultimately rejected the civil contempt petition because one set of allegedly incomplete applications was in fact complete, and "their completeness shows 'reasonable diligence' on the part of Defendants to follow the Court's order and the regulations that support it." With

respect to the other allegedly incomplete applications, the court declined to impose civil contempt sanctions not because appellants had not demonstrated an absence of reasonable diligence but because "it remains unclear what constitutes a 'complete' medical history" and consequently appellants had "failed to meet their burden on the remaining applications, because the standard for contempt requires clear and convincing evidence that Defendants violated the decree." Appellants did not prevail because they simply failed to produce clear and convincing evidence that Indiana had violated the consent decree. They have now latched onto a single phrase from the opinion and insist that it mandates reversal, but we think this is an uncharitable characterization of the district court's opinion and, at any rate, is neither an error nor grounds for reversal.

## B. Whether appellants produced sufficient evidence of non-compliance

The burden of proof aside, appellants also contend that the evidence they presented to the district court adequately demonstrated Indiana Medicaid's non-compliance with the consent decree and justified civil contempt sanctions. As the district court summarized it, appellants made the following factual allegations in the contempt proceeding, based on their random sampling of applications:

> (1) In nine, or 35%, of the applications, Defendants failed to request twelve-month medical histories; (2) in seven, or 25%, of the applications, Defendants

failed to collect information that was "complete and detailed enough" to make a disability determination; (3) in three, or 12%, of the applications, Defendants failed to collect a list of any medical facilities that treated the applicant; (4) in eight, or 53%, of fifteen applications, the county office forwarded the application to the MMRT without any medical records; (5) in four, or 27%, of fifteen applications, the Medicaid application was denied on the same day that the Medicaid Medical Review Team requested additional information about the applicant; (6) in one of fifteen applications, the only medical information included in the application was gathered by a registered nurse, rather than a doctor; (7) in none of the applications did the packet contain Form 2032, which is supposed to be present any time an applicant was asked to receive a physical examination; (8) in none of the applications did the county caseworker make a record of requests for medical information; and (9) in neither of the two applications in which a physician requested that the applicant receive further testing was the testing actually performed before the application was denied.

The district court conducted its own review of the files and concluded that at least five of the allegedly incomplete applications in fact contained detailed records. The court did note that of the remaining nine applications, "[f]our of these nine applications are clearly less complete than the other five," either because those files were missing Form 251A altogether or because Form 251A was missing pages or was otherwise incomplete. Appellants

claim that this statement regarding the four case files is evidence of Indiana's non-compliance with the consent decree and a sufficient basis for holding the program's administrators in civil contempt.

Appellants cite case law from this and other circuits establishing that Medicaid programs are subject to a strict compliance standard with respect to regulatory procedures and deadlines for reaching decisions on individual applications. They rely heavily on *Smith v. Miller*, 665 F.2d 172 (7th Cir. 1981), a case involving a suit for injunctive relief against the Illinois Medicaid program. *Smith* contained broad language that seems to support appellants' position: "It is uncontested that the district court possessed the equitable power to enjoin the Department's violation of federal laws and regulations. While a state's participation in the Medicaid program is purely voluntary and its acceptance of substantial federal funds uncoerced, once electing to participate, it must fully comply with federal statutes and regulations in its administration of the program." *Id.* at 175. Appellants also cite case law from other circuits to support a full compliance standard. *See Withrow v. Concannon*, 942 F.2d 1385, 1387 (9th Cir. 1991) (finding that "[t]he language of the federal regulations is unequivocal . . ."); *Alexander v. Hill*, 707 F.2d 780, 784 (4th Cir. 1983) ("[t]he law itself compels 100% compliance . . ."). Indeed, appellants argue that even if this circuit accepted some kind of de minimis amount of deviation from regulatory or statutory requirements, the rates of non-compliance in their sample would be sufficient to require some kind of remedial action.

We are presented, then, with the question of how much non-compliance is needed before a district court can impose civil contempt sanctions. A few preliminary points will sharpen our analysis on this issue. Other courts have observed that in civil contempt proceedings, "context is extremely important to appellate oversight . . ." *Langton v. Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991). In contempt proceedings between private parties, the consent decree operates like a contract between the two and a reviewing court has comparatively greater freedom to revisit the district court's interpretation of the decree. *Id.* at 1220-21. When the consent decree involves a public agency, however, "the district court's construction of a consent decree should be accorded considerable deference, because broad leeway is often necessary to secure complicated, sometimes conflicting, policy objectives." *Id*. at 1221.

The Supreme Court has also cautioned district courts that in using their contempt powers against a public agency they should select a remedy carefully tailored to the proposed end. *Spallone v. United States*, 493 U.S. 265, 276 (1990); *see also Missouri v. Jenkins*, 495 U.S. 33, 51 (1990) ("[O]ne of the most important considerations governing the exercise of equitable power is a proper respect for the integrity and function of local government institutions."). This warning recognizes that when a district court uses its remedial powers (including the power to enforce a consent decree) in the public law context, district courts "typically play a proactive role—a role which can have nearly endless permutations." *Langton*, 928 F.2d at 1221. A district court in such circumstances can find

itself deeply entangled with the development and management of a city or state agency. This circuit's experience with the remedial decree in the long-running case of *Gautreaux v. Chicago Housing Authority* (of which 491 F.3d 649 (7th Cir. 2007) is only the most recent iteration in a forty-year lawsuit) illustrates the many ways in which such a decree can deepen a district court's involvement with a case and require it to resolve many subsequent disputes between the parties, rather than terminating it through the sort of one-shot transfer that a consent decree between private parties often involves. The present case is another example; it has twice been settled through consent decrees and has been on the docket of the Southern District of Indiana intermittently since 1994. We can state the point of these observations simply: We are sensitive to the district court's need not to extend its equitable powers too far and to require a persuasive showing of contempt before taking such serious action against a state administrative agency.

We conclude that the district court did not abuse its discretion by ruling that appellants had not produced clear and convincing evidence of Indiana's violation of the court order. The first problem for appellants is that the district court did not make a factual finding that any of the applications are incomplete and in violation of the consent decree. The district court did note something that appellants stress in their brief, which is that four of the files are less complete than the others. However, due to the inconclusive nature of the parties' arguments about what constitutes a "complete" medical history, the district court was unable to make any factual findings

about whether the files were or were not in compliance with the regulatory standard incorporated into the consent decree. (The district court's uncertainty about the applicable regulatory standard is covered in the next section.) Appellants urge us to read the district court's identification of four less-than-complete applications as an implicit finding that Indiana Medicaid is not collecting complete medical histories and is in violation of the consent decree.[2] We will not base a civil contempt order on an implicit finding when the district court declined to make that finding on the record or base a contempt order upon it, however.

Second, with respect to the legal standard, the case law that appellants cited occurred outside the civil contempt context; those cases sought injunctive or equitable relief for unsettled cases.[3] They are thus swapping the

---

[2] One problem complicating this categorization is that those four files are all at various stages of incompleteness. One file, designated File M, contains no medical history outside of a copy of a prescription refill; File E contains a Form 251A that is missing pages; File L contains only one incomplete Form 251A and nothing from other medical providers; and File H was denied on the same day that the MMRT requested additional records which they apparently never received.

[3] *Withrow* is a particularly problematic citation for appellants, as the Ninth Circuit specifically distinguished between the initial remedy and enforcement of that remedy in contempt proceedings. *Withrow*, 942 F.2d at 1388 ("As with any program of this size, a few inadvertent errors are inevitable, and we

(continued...)

standard for civil contempt with the standard for initial injunctive relief. Appellants anticipate this objection, and argue in a footnote in their brief that this court cannot fairly subject motions seeking to enforce the consent decree to a higher burden of proof than the lawsuit seeking relief in the first instance. That argument conflates a standard used to determine an injury with a standard used to measure the efficacy of a remedy, however. The appellants' position is that the failure to follow regulatory procedures inflicts an injury on them; to the extent that their allegations are true, their injury does entitle them to equitable relief. The existence of the consent decree in this case, however, means that they already have that relief. The issue at this stage is whether we can hold the Indiana program in civil contempt for not taking adequate steps to implement that remedy and, for the reasons discussed above, a district court is entitled to require clearer and more convincing evidence of non-compliance before imposing coercive sanctions.

Thus, even if we did what appellants ask us to do and took the four "less than complete" applications as an implicit finding that Indiana fell short of the terms of the consent decree in some cases, that finding would not necessarily justify the civil contempt sanctions that ap-

---

[3] (...continued)

are confident that the district court will not exercise its equitable powers to hold the state in contempt for every minor, inadvertent infraction of the Act if the court is satisfied that the officials are complying with the Act as strictly as is humanly possible.").

pellants seek. We agree with the district court that, given the present context, those sanctions are not warranted based on the evidence presented.

### C. Whether the district court erred by not interpreting "complete medical history" as always requiring copies of a treating physician's records

Appellants' final issue in this appeal is whether the district court made an error of law by interpreting the phrase "complete medical history" in the consent decree to mean something less than copies of the medical records of each treatment source of a given applicant. This issue pertains to the five application files that contain completed copies of Form 251A but do not contain copies of the treating physician's medical record. Appellants argue now that the district court erred by not concluding that those files do not contain the complete medical history required by the regulations.

Once again, the consent decree requires that the administrators of Indiana Medicaid develop records used in eligibility decisions in the same way that the SSI program develops records for eligibility decisions. The Code of Federal Regulations provisions for that program promises applicants that, "we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application." 20 C.F.R. § 416.912(d). With respect to the phrase "com-

plete medical history," the regulations define that as follows:

> By complete medical history, we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application. If you say that your disability began less than 12 months before you filed your application, we will develop your complete medical history beginning with the month you say your disability began unless we have reason to believe that your disability began earlier.

20 C.F.R. § 416.912(d)(2). Appellants clearly believe that the phrase "complete medical history" means physical copies of the physician's own records, going back at least twelve months before the date of the application. Indiana clearly operates under the incompatible belief that Form 251A suffices as a complete medical history, since it gathers information from each of the applicants' treatment providers for at least the previous twelve months. The district court was unable to sort out this disagreement based on the parties' presentations. It invited appellants to re-file their contempt petition along with evidence elaborating on the meaning of "complete medical history." Specifically, the district court was interested in receiving expert or other testimony on "whether the applications that included only Form 251A, or the other applications that were otherwise less comprehensive, are 'complete' enough to conform to the consent decree. Furthermore, we require a factual explication of what precisely the Medicaid system instructs physicians to do and take account of in completing Form 251A."

The appellants urge us to reverse this part of the deci-
sion, claiming that this interpretation of the consent decree
violates the plain meaning of the terms as well as the
decisions of courts that have reviewed the meaning of the
relevant C.F.R. provisions. They cite, among other things,
the dictionary definition of complete (meaning "having
all parts or elements; lacking nothing"), and two opinions
from the Second Circuit reversing an agency's eligibility
determination because some medical records were miss-
ing. *See Rosa v. Callahan*, 168 F.3d 72 (2d Cir. 1999); *Pratts v.
Chater*, 94 F.3d 34 (2d Cir. 1996).

A court interprets the meaning of a consent decree in the
same way it interprets the meaning of a contract, and a
reviewing court examines that interpretation de novo.
*Goluba*, 45 F.3d at 1037-38. Of course, because these reg-
ulations were only grafted onto the Indiana Medicaid
program as part of a consent decree, no court has previ-
ously interpreted what "complete" means in this exact
context, and the district court obviously felt unable to
reach a conclusive interpretation based on the evidence
presented in the contempt petition. This circuit has not
read "complete" in the strict terms that the appellants do,
however. In past cases, where SSI applicants whose
application was denied by an ALJ claimed a violation of
the duty to develop a complete record, we have said that
our court "generally upholds the reasoned judgment of the
Commissioner on how much evidence to gather, even
when the claimant lacks representation." *Nelms v. Astrue*,
553 F.3d 1093, 1098 (7th Cir. 2009); *see also Luna v. Shalala*,
22 F.3d 687, 692 (7th Cir. 1994) ("This court has com-
mented on the difficulty of having a 'complete' record as

'one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on.' ").

The regulations also place at least part of the burden for gathering the relevant medical records on the applicant rather than on the agency. "In general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)." 20 C.F.R. § 416.912(a). While the regulations task the agency with the responsibility to develop an applicant's medical history, they discuss this in terms of a duty to make a "reasonable effort" to do this. "We will make every *reasonable effort* to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 416.912(d) (emphasis added). Indiana, in reliance on these portions of the regulations, interprets the consent decree much more narrowly, and argues that by training case workers to interview Medicaid applicants and requesting an applicant's medical history they fulfill their burden under the regulations with respect to the collection of a physician's records.

Appellants' position that a Form 251A does not suffice as an applicant's "complete medical history" within the meaning of 20 C.F.R. § 416.912(d)(2) is based on an assumption that the document is deficient in some respect, or that a physician's records contain material informa-

tion not captured in Form 251A.[4] As the district court noted, however, there is not enough information before the court to reach a determination on that issue. The regulations require both the applicant and the agency to develop a record sufficient for the agency to make an informed determination about the applicant's disability. Based on this record we are not prepared to hold categorically that an agency can never use a summary form when developing that record or that the absence of any document from a physician within the last twelve months, whatever its relevance, is a violation of the regulations.

While the case is simply underdeveloped on this point, our ruling does not foreclose all future claims on this issue from appellants. The district court indicated a willingness to entertain further petitions and to engage

---

[4] Appellants argue that a Form 251A is deficient because it is not a "record" under Indiana law, because the Indiana Code defines "medical records" as files "possessed" by health care providers before they are turned over to the state. Ind. Code. § 1-1-4-5(6). First, appellants do not explain why Indiana law should inform the meaning of a term used in the federal regulations. We understand that looking at the Indiana Code may illuminate how the parties understood the term, but appellants otherwise urge this court to adopt a strict reading of the term as it is construed by courts interpreting the federal regulations themselves. The Indiana Code would be of limited value in that exercise. Second, appellants do not explain how the fact of possession makes a substantive difference in the completeness of an applicant's file if, for instance, the file contained a form completed by a health care provider containing all of the relevant information in the provider's files.

in greater fact-finding on the meaning of "complete medical history" under the terms of the consent decree, including gathering information about how thorough health care providers have been when filling out Form 251A. This matter presently comes before us as a contempt petition, however, where the salient issue is whether appellants have presented sufficient evidence that the Indiana Medicaid program has violated a court order. We agree with the district court that they have not satisfied that burden at this point.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.