**BAD ASS COFFEE COMPANY OF HAWAII, INC., a Utah corporation, Plaintiff,**

v.

**BAD ASS COFFEE LIMITED PARTNERSHIP, a Nevada limited partnership, and Robert Alan Jones, a Nevada resident, Defendants.**

No. 2:99–CV–00150.

United States District Court,
D. Utah,
Central Division.

May 9, 2000.

Richard D. Burbidge, Jefferson W. Gross, Burbidge & Mitchell, Salt Lake City, UT, for Plaintiff.

Randall Gaither, Salt Lake City, UT, for Defendants.

Robert Alan Jones, pro se.

## ORDER IN RE CIVIL CONTEMPT

J. THOMAS GREENE, District Judge.

This matter is before the court on Motion of plaintiff Bad Ass Coffee Company of Hawaii ("BACH") for Contempt Citation against defendants Bad Ass Coffee Limited Partnership ("BACLP")[1] and Robert Alan Jones. The parties submitted

---

1. Testimony received in connection with the Motion indicates that BACLP has changed its name from "Bad Ass Coffee Limited Partnership" to "Coffee Limited Partnership" to avoid reference to the name "Bad Ass Coffee." However, the court will continue to refer to the partnership by its original name.

memoranda and other documentation on the matter, and on March 27, 2000 and April 4, 2000, the court held evidentiary hearings at which live testimony was presented.[2] At the hearings, BACH was represented by Richard D. Burbidge and Jefferson W. Gross of Burbidge and Mitchell, BACLP was represented by Randall Gaither, and Mr. Jones represented himself. Based on the evidence offered and received at the two hearings, and being fully advised, the court enters its Findings of Fact and Order.

### FINDINGS OF FACT

1. On February 23, 2000, this court entered Findings and Order on Motion for Preliminary Injunction (the "Preliminary Injunction"), which enjoined BACLP, its principals and agents (including Jones) from using or displaying the Bad Ass Coffee name and logo in Hawaii and from "selling goods and products labeled with the Bad Ass Coffee name and mark from retail outlets in Hawaii ...." Preliminary Injunction at 14–15.

2. On February 24, 2000, true and correct copies of the Preliminary Injunction were either mailed or faxed by the Clerk of this court to Mr. Gaither (BACLP's counsel) and Mr. Jones at their separate offices, and on February 25, 2000, plaintiff's counsel faxed and mailed additional notice of the Preliminary Injunction to both Mr. Gaither and Mr. Jones.

3. Jones, who is President of the General Partner of BACLP, testified that it was not until February 28, 2000, that he received a copy of the Preliminary Injunction for himself and BACLP at his office in Las Vegas, Nevada, at which time he immediately caused a memo he had written to be faxed to the managers of The Bad Ass Coffee Company Ice Cream Store (the "Ice Cream Store"), the Restaurant Row store and the Keauhou store all located in Hawaii. The memo informed the managers that the names of the three stores were being changed to "Keoki's Surfin' Ass Café" and that new arrangements would be made with individual stores regarding signage and inventory. The memo made no mention of the Preliminary Injunction and contained no specific instruction to remove products labeled with the Bad Ass Coffee name and logo from the stores' shelves or to remove Bad Ass Coffee signage. In fact, the only specific instructions in the memo were that telephones should be answered without reference to Bad Ass Coffee and that any questions regarding the name change should be referred to the Las Vegas Office of BACLP.

4. On February 25, the Ice Cream Store continued to display Bad Ass Coffee signage.

5. On February 29, 2000, the Keauhou store continued to display Bad Ass Coffee labeled products and signage. By March 6, 2000, signage bearing the Bad Ass Coffee name had been removed from the Keauhou store, but the store continued to sell Bad Ass Coffee labeled products.

6. On March 1, 2000, Jones flew to Hawaii to oversee compliance with the Preliminary Injunction. He remained there until March 13, 2000.

7. BACLP and Jones faced practical difficulties and incurred substantial costs in the course of effecting compliance with the Preliminary Injunction. For example, the landlord of one of BACLP's stores threatened to terminate BACLP's lease if the name of the store was changed, and BACLP was forced to retain counsel in connection with that dispute. In addition, defendants were forced to cancel television advertising that had been previously arranged and scheduled.[3]

---

**2.** In connection with BACH's Motion, the court issued an Order to Show Cause why defendants BACLP and Jones should not be held in contempt. Thus, defendants received full and complete notice of the purpose and nature of the evidentiary proceedings.

**3.** Jones testified about other difficulties he faced. For example, shortly after arriving in

7. On March 26, 2000, various products labeled with the Bad Ass Coffee name and logo, including bags of coffee, T-shirts, and mugs, were still available for sale at both the Ice Cream Store and the Keauhou store. In addition, a sign stating "Last Chance for Bad Ass" was prominently displayed in the front window of the Ice Cream Store.

9. The Ice Cream Store, Keauhou store and Restaurant Row store had ceased using or displaying the Bad Ass Coffee name, including use of the name through the sale of products labeled with the Bad Ass Coffee name or mark, by March 29, 2000, and those stores were in substantial compliance with the Preliminary Injunction as of that date. Nevertheless, full compliance with the Preliminary Injunction as of that date was not accomplished in at least the following particulars:

a. On an interior wall of the Ice Cream Store, an artistic rendering of a scroll was still on display containing an explanation of the origins of the "Bad Ass Coffee Company" name. The name "Bad Ass Coffee Company" is written prominently at the bottom of the scroll.

b. The Keauhou store continued to distribute and honor a card called the "Bad Ass Coffee Co. Club Card," which allows customers to keep track of their coffee purchases and receive their tenth coffee drink at no charge.

c. The Keauhou store and the Ice Cream Store continued to sell "I Love My Bad Ass Attitude" T–Shirts, some of which apparently had the "Bad Ass Coffee Company" name and mark printed on the front of the shirt.[4]

10. Plaintiff failed to carry the burden of proof that Jones or BACLP were in collusion or in concert with or participants concerning alleged violation of the Preliminary Injunction by another store referred to in the Preliminary Injunction, i.e., The Bad Ass Coffee Company Original Store ("The Original Store"), which is owned and operated by Dennis Lovell and/or others who are not under the control of BACLP or Jones.[5]

11. In connection with the hearings on the Motion for Contempt Citation, BACH brought two witnesses, Toby Hoogs and Karen Pugh, from Hawaii to Utah. Both testified and identified photographs which were received into evidence which support findings herein about the Ice Cream Store and the Keauhou store. Mr. Hoogs is a

Hawaii he received word that two close acquaintances—one a client, the other a close friend—had passed away and that he had to spend time rendering assistance with some matters that arose with respect to his deceased client. In addition, Jones testified that he had other matters to attend to in Hawaii, including the acquisition of a coffee farm, and that the store managers were reluctant to comply with his instructions. In this regard, in some instances apparently Bad Ass Coffee products were placed back on shelves of at least one of the stores after Jones left Hawaii.

4. Defendant Jones testified that he directed that any and all items labeled with the Bad Ass Coffee name or mark be removed from all three stores and that the aforementioned specific failures to comply with the Preliminary Injunction were unintentional oversights which would be remedied immediately. He testified that full, immediate and unconditional compliance with the Preliminary Injunction as to all three stores was the intent of himself and BACLP.

5. Plaintiff presented evidence regarding use of the Bad Ass Coffee name and mark at The Original Store. However, such evidence is not relevant to the present Motion. The Preliminary Injunction enjoins only BACLP and its principals and agents (including Jones) from displaying the name and mark. Although BACLP acquired The Original Store from BACH through an Asset Purchase Agreement, it thereafter sold the store to Dennis Lovell in a transaction that occurred before the present lawsuit was filed. Plaintiff has not demonstrated that Lovell is a principal or agent of BACLP or that Lovell has acted in collusion with Jones to avoid the Preliminary Injunction. Accordingly, the court makes no finding of contempt with respect to The Original Store. In this regard, the court notes that litigation is currently pending between BACH and Lovell in this District as well as in Hawaii state court concerning operations at that store.

professional photographer who had taken photographs at the Ice Cream Store and Keauhou store, and Ms. Pugh is a licensee of BACH who had observed and photographed the two stores. BACH's costs related to bringing these two witnesses included (i) fees and/or compensation paid to Mr. Hoogs and Ms. Pugh; (ii) costs of airfare, food, lodging and related expenses incurred in connection with bringing Mr. Hoogs and Ms. Pugh to Utah; (iii) and Federal Express charges. These costs, totaling $5,749.33, were incurred as a direct result of Jones' failure to comply with the Preliminary Injunction. The court finds that the costs incurred were reasonable and that such were reasonably necessary to establish a factual predicate of noncompliance with the Preliminary Injunction and to cause defendants' future compliance therewith.

12. The court finds by clear and convincing evidence that Jones and BACLP had notice and actual knowledge at least by the end of February 2000 of the Preliminary Injunction issued by this court on February 23, 2000. This court finds that defendants disobeyed the order and failed to comply with it in important and substantial particulars until March 29, 2000, at which time substantial compliance was achieved.

13. This court finds that defendants failed to establish by clear and convincing evidence that all reasonable steps were taken in good faith to ensure compliance with this court's Preliminary Injunction dated February 23, 2000. Moreover, defendants failed to show by clear and convincing evidence that substantial compliance with the said Preliminary Injunction was achieved before March 29, 2000 or that defendants were plainly unable to comply with this court's order. Further, defendants failed to be reasonably diligent and energetic in attempting to comply with the Preliminary Injunction until that time.

## I. CIVIL CONTEMPT [6]

■ It is important to distinguish between civil as opposed to criminal contempt. This distinction is sometimes difficult because the same acts may give rise to both criminal and civil contempt. In this regard, the Supreme Court has stated:

> [T]he critical features are the substance of the proceeding and the character of the relief that the proceeding will afford. "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court." ... If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

*Hicks v. Feiock*, 485 U.S. 624, 631–32, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). This court made clear by explicit reference during both hearings on this matter that plaintiff's motion was regarded by the court as a motion for civil contempt.[7]

---

6. Under federal law, the court "ha[s] power to punish by fine or imprisonment, at its discretion, ... contempt of its authority ... [including, d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401 (1994); *see also* Fed.R.Civ.P. 70 ("If a judgment directs a party ... to perform any ... specific act and the party fails to comply .... [t]he court may ... in proper cases adjudge the party in contempt.").

7. Allegations of criminal contempt must be proved beyond a reasonable doubt and the defendant may also have a right to trial by jury if he is charged with serious, as opposed to petty, contempt. *See Hicks*, 485 U.S. at 632 & n. 5, 108 S.Ct. 1423; *Bloom v. Illinois*, 391 U.S. 194, 208–10, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). However, civil contempt need only be proved by clear and convincing evidence and there is no right to a jury trial in civil contempt proceedings. *See Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966).

In a civil contempt proceeding, the complainant "has the burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir.1998) (internal citations omitted). The contemnor's disobedience need not be "willful" to constitute civil contempt. *See Goluba v. School District of Ripon*, 45 F.3d 1035, 1037 (7th Cir.1995). Indeed, a district court is justified in adjudging a person to be in civil contempt for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered.[8] *See id.*

## II. ANALYSIS

With respect to the contumacy alleged by plaintiff, plaintiff has met its burden of showing defendants' contempt of the Preliminary Injunction by clear and convincing evidence, and defendants have failed to meet their burden of defense. Plaintiff has presented clear and convincing evidence of defendants' contumacy with respect to the Keauhou store and the Ice Cream Store.[9] As late as March 26, 2000, defendants continued to display and offer for sale various products labeled with the Bad Ass Coffee name and logo, including bags of coffee, T-shirts, and mugs, at both the Ice Cream Store and the Keauhou store. In addition, a sign stating "Last Chance for Bad Ass" was promi-

nently displayed in the front window of the Ice Cream Store.

Defendants effected substantial compliance with the Preliminary Injunction by March 29, 2000. However, defendants had ample notice and disobeyed the order, taking over a month to comply with the straightforward directives of that injunctive decree. Defendants have not shown that they made the type of timely, energetic or diligent effort that would absolutely vitiate their contumacy. Nor have defendants shown that they took "all reasonable steps" in good faith to comply with the Preliminary Injunction. Therefore, defendants are adjudged to be in civil contempt for failure to obey the Preliminary Injunction.

## III. SANCTIONS

Having determined that defendants should be held in contempt for failing reasonably to comply with the Preliminary Injunction, this court must fashion an appropriate sanction. The Tenth Circuit has declared that:

> Sanctions for civil contempt may only be employed for either or both of two distinct remedial purposes: "(1) to compel or coerce obedience to a court order . . . ; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]"

*O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir.1992)

---

**8.** Defendants may assert a defense to civil contempt by showing by clear and convincing evidence that "all reasonable steps" were taken in good faith to ensure compliance with the court order and that there was substantial compliance, or relatedly by proving "plainly and unmistakably" defendants were unable to comply with the court order.
*Bauchman v. West High School*, 906 F.Supp. 1483, 1494 (D.Utah 1995). *See also Donovan v. Burgett Greenhouses, Inc.*, 759 F.2d 1483, 1486 (10th Cir.1985); *Spectra Sonics Aviation, Inc. v. Ogden City*, 931 F.2d 63, 1991 WL 59369, at *2 (10th Cir. Apr. 19, 1991).

**9.** Plaintiff proffered to the court affidavits purporting to indicate that defendants failed

to comply with the Preliminary Injunction at the Restaurant Row store in Honolulu, Hawaii. However, the court declined to admit those affidavits into evidence except for the limited purpose of showing that the photographs attached thereto were true and accurate representations of the stores depicted, without respect to any particular date, as established by the live testimony of Michael Bilanzich. Because plaintiff offered no reliable evidence as to the time the photographs were taken, the court makes no findings concerning defendants' alleged noncompliance at the Restaurant Row store.

(quoting *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1147 (9th Cir.1983)).

According to the evidence received during the April 4, 2000 hearing, defendants had effected substantial compliance with the Preliminary Injunction as of March 29, 2000. Thus, there does not appear to be any need for coercive sanctions.

Nonetheless, both the equities and the evidence justify imposing a compensatory sanction upon defendants. Where the court imposes a fine upon the contemnor " 'for compensatory purposes, the amount of the fine must be based upon the complainant's actual losses sustained as a result of the contumacy.' " *Id.* (quoting *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.,* 646 F.2d 800, 810 (2d Cir.1981)). Clearly, the amount of any compensatory fine must be justified by evidence demonstrating the amount of loss to a reasonable degree of certainty. Otherwise, " 'any sum awarded by the court is speculative and therefore arbitrary.' " *Id.* (quoting *Allied Materials Corp. v. Superior Prods. Co., Inc.,* 620 F.2d 224, 227 (10th Cir.1980)).

With these standards in mind, the court makes no award of sanctions in connection with losses plaintiff may have sustained by reason of defendants' unauthorized use of its mark after issuance of the Preliminary Injunction. Plaintiff presented some evidence as to defendants' gross revenues in connection with the operation of the Ice Cream Store and an estimate as to such revenues in connection with the operation of the Keauhou Store. However, the court has not received sufficient evidence to impose a compensatory sanction concerning operations at those stores. Accordingly, the court defers, in the interests of judicial economy, determination of alleged losses flowing from defendants' unauthorized use of plaintiff's mark. The court does not see any compelling reason to ascertain at this time what damages may lie for defendants' use of plaintiff's mark in the Keauhou Store and the Ice Cream Store between February 29, 2000 and March 29, 2000. Judicial economy will be better served by leaving the determination of such damages to the trial when plaintiff's damages, if any, flowing from defendants' unauthorized use of plaintiff's mark can be ascertained.

Plaintiff has demonstrated that defendants' contumacy forced plaintiff to incur reasonably necessary costs and expenses in the amount of $5,749.33 in connection with gathering and presenting to the court evidence that defendants continued to use plaintiff's mark after the Preliminary Injunction had issued. These include (i) the fees paid to Toby Hoogs, a professional photographer, and Karen Pugh, a Bad Ass Coffee licensee; (ii) the costs of airfare, food, lodging and related expenses incurred in connection with bringing Mr. Hoogs and Ms. Pugh to Salt Lake City to testify at the contempt hearing; and (iii) Federal Express charges. Plaintiff also incurred reasonable costs and attorney fees in connection with investigating and prosecuting defendants' civil contempt. A compensatory sanction is justified because of these actual losses.

Based upon the foregoing, it is hereby,

ORDERED, ADJUDGED, AND DECREED that defendants BACLP and Jones acted in civil contempt of court by failing reasonably to comply with the Preliminary Injunction through and until substantial compliance was achieved on March 29, 2000; it is

FURTHER ORDERED that defendants shall pay to plaintiff within 10 days after the date of this Order the sum of $5,749.33, as a compensatory fine, and shall further pay to plaintiff its reasonable costs and attorney fees, which plaintiff has incurred in connection with the investigation of defendants' contumacy and the prosecution of its motion for a contempt citation. Counsel for plaintiff may submit a detailed affidavit for review and approval by the court concerning such costs and attorney fees; it is

FURTHER ORDERED that defendants must cure any continuing violations

of the Preliminary Injunction, if any still persist, within ten days after the date of this order. If such violations are shown to exist and continue more than ten days beyond the date of this order, the court will entertain another motion for civil contempt.