**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 30 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BAD ASS COFFEE COMPANY OF
HAWAII, a Utah corporation,

　　　Plaintiff-Appellee,

v.

BAD ASS COFFEE LIMITED
PARTNERSHIP, a Nevada limited
partnership; ROBERT ALAN JONES,
a Nevada resident,

　　　Defendants-Appellants.

Nos. 00-4045, 00-4077, 00-4179
(District of Utah)
(D.C. No. 99-CV-150-G)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. INTRODUCTION

Appellants Robert Alan Jones and Bad Ass Coffee Limited Partnership ("BACLP")[1] entered into numerous agreements with Appellee Bad Ass Coffee Company of Hawaii, Inc. ("BACH"). These agreements governed, *inter alia*, BACLP's use of the Bad Ass Coffee Company trademark (the "Trademark") in the states of Hawaii and Nevada. BACH unilaterally terminated several of the agreements thereby affecting BACLP's continued right to use the Trademark. After the federal district court entered a judgment confirming an arbitration award relating to BACH's termination of one agreement, BACH sought and was granted preliminary injunctions enjoining BACLP from using the Trademark in Hawaii and Nevada. BACLP appeals from the judgment confirming the arbitration award[2] and from the two orders granting the preliminary injunctions. The three cases were consolidated in this appeal. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1291(a)(1), this court **affirms**.

---

[1] Although it appears that BACLP has changed its name, this court will continue to refer to it as Bad Ass Coffee Limited Partnership. *See Bad Ass Coffee Co. of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, 95 F. Supp.2d 1252, 1252 n.1 (D. Utah 2000).

[2] *See* Fed. R. Civ. P. 54(b).

## II.   FACTUAL BACKGROUND

The parties are well acquainted with the copious record in this case. Consequently, this court includes only the background material necessary to fully understand our holding.

Jones was formerly employed by Royal Aloha Coffee, Tea & Spice Company, Inc. ("Royal Aloha") d/b/a The Bad Ass Coffee Company.  In November 1997, Royal Aloha assigned all of its right, title, and interest in and to the Trademark to BACH.

In February 1997, Jones and RAJ Limited, a Nevada corporation wholly owned by Jones, brought a lawsuit in Nevada state court naming BACH and several other entities and individuals as defendants.  The parties resolved the litigation by entering into a series of cross-referenced agreements: (1) a Confidential Settlement Agreement and Mutual Release (the "Settlement Agreement"); (2) an Asset Purchase and Sale Agreement (the "APSA"); (3) a Master Distribution Agreement Hawaii (the "MDAH"); (4) a Master Distribution Agreement Nevada (the "MDAN"); (5) a Territory Development Agreement Hawaii (the "TDAH"); (6) a Territory Development Agreement Nevada (the "TDAN"); and (7) an Installment Promissory Note (the "Promissory Note"). These agreements governed, *inter alia*, the transfer and sale of certain assets from BACH to BACLP.  BACLP is a Nevada limited partnership in which Jones is the

principal. BACH and BACLP also entered into a Franchise Agreement dated January 1, 1999 (the "Franchise Agreement"). This agreement governed BACLP's operation of a Bad Ass Coffee Company retail store in Las Vegas, Nevada.

Almost before the ink was dry on the agreements, disputes arose between BACH and BACLP. In early 1999, BACH began sending default notices to BACLP and eventually gave BACLP notice of the immediate termination of the MDAH based on BACLP's failure to submit monthly sales reports and pay royalties. On March 9, 1999, BACH sent BACLP written notice that it was terminating both the MDAN and the TDAN based on BACLP's default under the Promissory Note and the APSA. BACH also filed a lawsuit in federal district court against BACLP and Jones.

An arbitration hearing to determine the propriety of BACH's termination of the MDAH commenced on August 4, 1999. On September 3, 1999, the arbitrator issued a written award in favor of BACH, concluding that BACH was entitled to terminate the MDAH. The arbitrator also awarded BACH administrative fees and expenses in the amount of $5,800. BACLP filed a motion to vacate the arbitration award in Third Judicial District Court, Salt Lake County, Utah. BACH filed a motion to confirm the arbitration award in federal district court and a notice to remove the Utah state action to federal court.

On September 23, 1999, BACH gave BACLP written notice of the termination of the Franchise Agreement. BACH then filed an amended complaint in its federal suit against BACLP and Jones. The amended complaint contained, *inter alia*, claims against BACLP alleging: (1) trademark infringement; (2) breach of the APSA, the Promissory Note, and the Security Agreement; (3) breach of the MDAH; (4) breach of the TDAH; (5) breach of the MDAN; (6) breach of the TDAH; and (7) breach of the Franchise Agreement. BACH moved to consolidate the federal suit and the application to confirm the arbitration award.

On November 4, 1999, the federal district court denied BACLP's motion to remand the matter to state court, granted BACH's motion to consolidate, and granted BACH's motion to confirm the arbitration award. BACLP's motion to vacate the arbitration award was denied. BACH then filed a Motion for Award of Attorney's Fees in Connection With Confirmation of the Arbitration Award. This motion was granted on April 13, 2000.

On February 24, 2000, the district court granted BACH's motion for a preliminary injunction prohibiting BACLP from (1) using or displaying the Trademark in Hawaii, (2) interfering with BACH's efforts to negotiate with suppliers of its licensed products, and (3) purporting to authorize others to use the Trademark in Hawaii. On October 11, 2000, the district court granted BACH a

preliminary injunction enjoining BACLP from using the Trademark in Nevada or purporting to authorize others to use the Trademark in Nevada.

BACLP appeals the judgment confirming the arbitration award and awarding attorney's fees to BACH. BACLP also appeals the grant of the preliminary injunctions relating to the use of the Trademark in both Hawaii and Nevada. The appeals were consolidated and all are properly before this court.

## III.   DISCUSSION

### Appeal No. 00-4045

This court reviews the district court's order confirming the arbitration award using traditional standards. Findings of fact are accepted unless they are clearly erroneous and legal questions are reviewed *de novo*. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995). The review of an arbitrator's award, however, "is among the narrowest known to the law." *Litvak Packing Co. v. United Food & Comm. Workers Local 7*, 886 F.2d 275, 276 (10th Cir. 1989).

BACLP first argues that the district court lacked jurisdiction to confirm the arbitration award. Our resolution of the jurisdictional issue involves a two-step inquiry. First, "'there must be diversity of citizenship or some other independent basis for federal jurisdiction.'" *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

-6-

*Corp.*, 460 U.S. 1, 25 n.32 (1983)). Additionally, the parties must have "agreed, explicitly or implicitly, that any eventual arbitration award shall be subject to judicial confirmation." *Id*. at 866-67.

BACH asserts that 28 U.S.C. § 1332 provides the basis for federal jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000. BACLP argues that the amount in controversy is only $5,800; the amount awarded in administrative fees and expenses by the arbitrator. To determine the amount in controversy we must look to "the pecuniary effect an adverse declaration will have on either party to the lawsuit." *City of Moore v. Atchison, Topeka & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983). The arbitrator concluded that BACH properly terminated the MDAH, the agreement which gave BACLP the right to distribute Bad Ass Coffee Company products in Hawaii. In the memorandum it filed in support of its motion to vacate the arbitration award, BACLP represented to the district court that it had acquired this right for $100,000. BACLP's argument that the amount in controversy does not exceed $75,000 is disingenuous.

BACLP's position that the parties did not agree to judicial confirmation in federal court is also meritless. The MDAH provides that judgment upon any arbitration award "may be entered in any Court of competent jurisdiction" but does not identify any specific court. When no court is specified in the parties'

agreement, the Federal Arbitration Act provides that judgment may be entered in "the United States court in and for the district within which such award was made." 9 U.S.C. § 9. The arbitration award was made in Salt Lake County, Utah. Thus, the parties implicitly agreed that judgment on the arbitration award could be entered by the United States District Court for the District of Utah.

BACLP next argues that the arbitrator erroneously limited the scope of the arbitration when he refused to allow it to introduce evidence it characterizes as "affirmative defenses material to the controversy" between the parties. BACLP further asserts that the arbitrator's refusal to hear this evidence was contrary to the arbitrator's own order regarding the scope of discovery. An arbitrator "must grant the parties a fundamentally fair hearing." *Bowles Fin. Group, Inc. v. Stiffel, Nicolaus & Co.*, 22 F.3d 1010, 1012 (10th Cir. 1994). "[A] fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decisionmakers are not infected with bias." *Id.* at 1013. Even if the arbitrator erroneously excluded material evidence, we will not vacate the award unless the error deprived a party of a fundamentally fair hearing. *See* 9 U.S.C. § 10(a)(3) (requiring vacatur only when the arbitrator's refusal to hear pertinent and material evidence constitutes misconduct).

-8-

BACLP has failed to show that the arbitrator's refusal to consider the proffered evidence constituted misconduct on the part of the arbitrator or deprived it of a fundamentally fair hearing.  In fact, BACLP admits in its appellate brief that the arbitrator allowed it to present evidence "directly connected to payments made against royalties earned by royalty sales."  Additionally, in its Memorandum Concerning Scope and Effect of Arbitration Award, BACLP represented to the district court that one of its counterclaims, evidence relating to which it now asserts should have been admitted by the arbitrator, was properly excluded from the arbitration proceedings.  *See* Appellants' App. at 330  ("This is a claim which was not allowed by the Arbitrator in the Arbitration Proceedings as either a counterclaim, or as an affirmative defense to BACH's claims in the arbitration. BACH argued in the arbitration that this should be litigated in the federal district court and is not included in matters covered by the arbitration provisions of the [MDAH].  *BACLP agrees with this position . . . .*" (emphasis added)).

The record completely belies BACLP's specious assertion that the arbitrator's decision to exclude the proffered evidence constituted misconduct. BACLP's contention that it was denied a fundamentally fair hearing is baseless.

BACLP next argues that the district court erred when it failed to make written findings of fact supporting its judgment confirming the arbitration award. BACLP contends that this constitutes a wrongful failure to adhere to Utah

arbitration law. BACLP not only fails to cite any case law supporting its argument, it fails to even identify the Utah law it claims the district court violated. We deem the issue waived. *See Rapid Transit Lines, Inc., v. Wichita Developers, Inc.*, 435 F.2d 850, 852 (10th Cir. 1970). ("[Appellant's] citation of but one authority, and that of no pertinence, suggests either that there is no authority to sustain its position or that it expects the court to do its research.").

Finally, BACLP argues that the district court erred when it awarded $8,668.75 in attorney's fees to BACH. These fees were incurred in connection with the confirmation of the arbitration award, not in connection with the arbitration proceeding itself. The Utah Arbitration Act provides that attorney's fees relating to the confirmation of arbitration award may be awarded by the court unless precluded by the arbitration agreement. *See* Utah Code Ann. § 78-31a-16; *see also Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 953 (Utah 1996) (holding that the attorney's fee provision in the Utah Arbitration Act does not conflict with federal law). The parties argue over whether the terms of the MDAH prohibit an award of attorney's fees relating to the confirmation of an arbitration award. The interpretation of a contract is a legal question reviewed *de novo* by this court. *See Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1171 (10th Cir. 1992).

The MDAH contains, *inter alia*, two provisions relating to the payment of attorney's fees. Article 17.03 is captioned, "Disputes and Arbitration" and states, "[t]he prevailing Party in any arbitration suit or action to enforce this Agreement, shall be entitled to recover the administrative costs of the arbitration proceeding and the fee for the arbitrators, but not attorney's fees." Article 17.06 is captioned, "Costs and Attorney's Fees" and states, in part, "if Company or Distributor is required to enforce this Agreement in litigation, the party prevailing in such proceeding shall be entitled to reimbursement of its costs and expenses, including reasonable accounting and legal fees." If we accept BACLP's argument and interpret Article 17.03 to prohibit an award of attorney's fees in both arbitration proceedings themselves and all subsequent actions seeking to enforce the arbitration award in litigation, the provision conflicts with Article 17.06 which permits attorney's fees to be awarded when a party is required to enforce the MDAH in litigation. We decline to adopt BACLP's construction of the MDAH because it would diminish the effect of Article 17.06. If possible, this court should adopt a reasonable interpretation of a contract that gives effect to all its provisions.[3] Such a reasonable interpretation is possible in this case. We can

---

[3]This well-settled rule of contract construction is applicable whether this court interprets the MDAH pursuant to Utah law or Hawaii law. *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990); *Globe Indem. Co. v. Teixeira*, 230 F. Supp. 451, 455 (D. Haw. 1964).

resolve any potential conflict between Article 17.03 and Article 17.06 by construing the phrase "arbitration suit or action," as used in Article 17.03, to mean only the arbitration proceeding itself and not any subsequent litigation involving the arbitration award. This construction is supported by the wording of Article 17.03. The relevant sentence in 17.03 allows a party to recover only the "administrative costs of the arbitration proceeding and the fee for the arbitrators." These expenses would be incurred only in the underlying arbitration proceeding and not in any subsequent litigation involving the arbitration award. Thus, it is reasonable to construe Article 17.03 to likewise apply only to attorney's fees incurred in the arbitration proceeding.

Confirmation of an arbitration award is a judicial proceeding; though related, it is separate from the underlying arbitration proceeding. Thus, BACH's motion seeking confirmation of the arbitration award is more appropriately viewed as an action seeking to enforce the MDAH in litigation than an arbitration proceeding. Additionally, BACH filed its motion to confirm the arbitration only after BACLP first filed a motion to vacate the arbitration award in Utah state court. Thus, BACH was "required to enforce [the MDAH] in litigation." Accordingly, we conclude that Article 17.03 of the MDAH does not apply to the attorney's fees awarded by the district court to BACH and that those fees were allowable under Article 17.06.

-12-

Because BACLP does not challenge the reasonableness of the fees awarded by the district court and has not identified any provision in the MDAH that prohibits an award of attorney's fees relating to the confirmation of an arbitration award, we conclude that the fees awarded by the district court were proper.

**Appeal No. 00-4077**

BACLP raises several arguments relating to the district court's grant of the preliminary injunction enjoining BACLP from using the Trademark and associated rights in Hawaii. This court reviews the grant of a preliminary injunction for abuse of discretion. *See United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999). Underlying legal issues are reviewed *de novo* and findings of fact are reviewed for clear error. *See id.*; *Oil, Chem. & Atomic Workers Int'l Union, Local 2-286 v. Amoco Oil Co.*, 85 F.2d 697, 703 (10th Cir. 1989).

BACLP first argues that the district court made erroneous factual findings and then relied on those findings when it granted the preliminary injunction. BACLP claims the court erroneously found that there were no existing licenses or franchises being operated by BACLP at the time of the execution of the MDAH. BACLP asserts it had been a joint owner and operator of a Bad Ass Coffee Company location in Hawaii since April 1996. To support this assertion, BACLP has identified in the record a signed license agreement entered into between Royal

Aloha, as licensor, and Hawaiian Islands Brewing Company, as licensee, on February 1, 1996. BACLP, however, has not submitted any record evidence detailing its relationship with Hawaiian Islands Brewing Company, or any evidence that the license agreement was in effect on the date the MDAH was executed. Although BACLP has included in the record disjointed, incomplete excerpts from the transcript of the preliminary injunction hearing that appear to relate to this license agreement, that testimony does not directly link BACLP to the licensee named in the license agreement. BACLP has thus failed to demonstrate that the district court's factual finding is erroneous. *See Naimie v. Cytozyme Labs., Inc.*, 174 F.3d 1104, 1113 (10th Cir. 1999) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion, and, if the appellant fails to do so, the court is under no obligation to remedy any failure of counsel to fulfill that responsibility." (quotations omitted)).

BACLP also claims that the district court erroneously relied on the TDAH to support the grant of the preliminary injunction. BACLP contends that the TDAH was invalid at its inception because BACH was not registered to do business in Hawaii when the TDAH was executed. Even assuming that BACLP's argument is relevant, BACLP did not raise it before the district court and thus we

do not address it. *See Crow v. Shalala,* 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court.")

BACLP next challenges the district court's determination that all of BACLP's rights to use the Trademark in Hawaii terminated at the time the APSA, the MDAH, and the TDAH terminated. The district court concluded that the APSA, the MDAH, and the TDAH encompassed and defined all the rights and obligations of BACLP and BACH with respect to the Trademark and that any and all rights BACLP had to use the Trademark in Hawaii were contingent upon the continued validity of those documents. The court concluded that BACLP failed to demonstrate that it possessed any rights, separate from the rights created under the terms of the APSA, the MDAH, and the TDAH, to use the Trademark in Hawaii.

In its order granting the preliminary injunction, the district court set forth the following language from the MDAH:

> 12.01 Upon the expiration or termination of this Agreement for any reason other than as set forth above, [BACLP] will:
> . . . .
>
> (b) Immediately cease and desist from using or displaying the name Bad Ass Coffee or other name or Mark except with respect to the franchises or licenses owned and operated by [BACLP] or its affiliates.

(c) Immediately cease and desist from using or displaying any of the Marks and forms of advertising indicative of the Business, products or operations except with respect to the franchises/licenses owned and operated by [BACLP] in accordance with the signed Agreements.

. . . .

12.02 So long as [BACLP] is not in default under the terms and conditions of its individual location Agreements, [BACLP] may continue as Licensee/Franchisee of Company for its individual locations pursuant to the terms and conditions of the respective Agreements.

BACLP argues that when it entered into the APSA, it was granted "vested rights to open locations under licenses already granted, or under a franchise system if it was approved" and that these rights survived the termination of the MDAH. We have reviewed the provisions in the APSA referenced by BACLP and they do not, standing alone, grant BACLP any independent right to use the Trademark. At most, the provisions leave open the possibility that BACLP could acquire such rights under separate agreements with BACH. BACLP, however, has failed to produce any such agreement. BACLP further argues, however, that it purchased three Bad Ass Coffee Company retail stores in Hawaii pursuant to the referenced provisions in the APSA and the sale included the transfer of the goodwill of those businesses. BACLP claims that the trade name of a business is automatically transferred with the goodwill and, thus, it also acquired the right to use the Trademark when it purchased the three retail locations.

When an agreement transferring an *entire* business, including goodwill, is silent as to the transfer of the business' trademark, this court has held that a buyer who continues to operate the business under the same trademark acquires ownership of the trademark. *See Okla. Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 632 (10th Cir. 1977). In this case, however, BACLP only purchased three retail locations from BACH pursuant to the terms of the APSA and Bills of Sale[4] executed several months later; BACLP did not acquire BACH's entire business. Additionally, the APSA is not silent as to the transfer of the Trademark, but specifically provides that the only right to the Trademark transferred pursuant to the terms of the APSA is an "exclusive license contained in the [MDAH] and rights thereunder subject to [BACH's] on-going rights including ownership to trademarks, service marks, tradenames and applications therefore for the state of Hawaii . . . ." Thus, any right BACLP acquired to use the Trademark pursuant to the terms of the APSA was clearly subject to BACH's ongoing ownership of the Trademark. BACLP's argument that it acquired a vested right to use the Trademark pursuant to the terms of the APSA or the Bills of Sale is meritless.

BACLP next challenges the district court's finding that the lawyer for the bankruptcy trustee in the Royal Aloha bankruptcy proceedings informed all Bad

_____

[4]BACLP has included only one Bill of Sale in the record.

Ass Coffee Company licensees that the executory contracts between them and Royal Aloha had been rejected. BACLP argues that the rejection of the executory contracts did not affect its right to use the Trademark because the Trademark and all encumbrances thereon were transferred to BACH prior to the initiation of Royal Aloha's bankruptcy proceedings. Thus, the rejection of the Royal Aloha agreements did not affect the licensees' rights to use the Trademark. Even assuming that the rejection of the executory contracts had no effect on a licensee's right to use the Trademark, we must reject BACLP's argument simply because it has failed to demonstrate that it was ever a party to any signed license agreement with Royal Aloha.

Finally, BACLP argues that the district court abused its discretion because the grant of the preliminary injunction altered the status quo. "To obtain a preliminary injunction, the party requesting such an extraordinary equitable remedy bears the burden of showing: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999). When the issuance of a preliminary injunction will alter the status quo between the two parties, the movant must show that "that on balance,

the traditional four factors weigh heavily and compellingly in favor of granting the injunction." *SCFC ILC, Inc. v. Visa USA*, 936 F.2d 1096, 1097 (10th Cir. 1991). The district court was clearly aware of BACLP's argument that an injunction prohibiting BACLP from using the Trademark at the three retail locations identified in the APSA would upset the status quo. *See Bad Ass Coffee Co. of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, No. 2:99-cv-00150, slip op. at 11 (D. Utah Feb. 23, 2000) ("To the extent BACH seeks to disrupt the status quo by enjoining defendants from selling Bad Ass Coffee Company coffee and products from their retail stores, this court applies the higher standard to its analysis of the preliminary injunction."). Accordingly, the district court's order contains a comprehensive analysis of the four factors and an explanation of how they weighed heavily in favor of BACH. We can find no reversible error in the district court's analysis and affirm the grant of the preliminary injunction for substantially those reasons stated by the district court.

### Appeal No. 00-4179

BACLP also appeals from the grant of the preliminary injunction enjoining it from using the Trademark in the state of Nevada. BACLP argues that the termination of the MDAN and the TDAN did not affect its rights to use the

-19-

Trademark in connection with the retail store located in Las Vegas.[5] BACLP contends that those rights were contained in the Franchise Agreement and that the Franchise Agreement did not terminate upon the termination of the MDAN and the TDAN.

BACLP's Nevada distribution and territorial development rights were detailed in the MDAN and the TDAN, two of the agreements executed contemporaneously with the APSA. In addition, BACLP acquired the right to operate the Las Vegas store pursuant to the terms of the Franchise Agreement. Subject to a fifteen-day cure period, BACH retained, *inter alia*, the power to terminate the Franchise Agreement if BACLP "fail[ed] to pay for any Product, or any fees, purchase price, advertising fees, transfer fees, renewal fees or other amounts due to [BACH] . . . ." BACH also retained the right to terminate the Franchise Agreement without allowing BACLP the opportunity to cure if "[BACLP] makes any material misrepresentations relating to the acquisition of the franchise or [BACLP] engages in conduct which reflects materially upon the operations and/or reputation of the BACH franchise business or the franchise System in an adverse manner."

---

[5]BACLP does not argue on appeal that the district court improperly enjoined it from using the Trademark pursuant to the terms of either the MDAN or the TDAN. This appears to be a concession that BACH properly terminated the MDAN and the TDAN, resulting in the termination of any rights BACLP had to use the Trademark in Nevada contained solely in those agreements.

Several months after BACH sent BACLP written notice that it was terminating the MDAN and the TDAN, BACH sent BACLP written notice that it was also terminating the Franchise Agreement.  BACH justified the termination, in part, on BACLP's alleged unauthorized use of the Trademark in Hawaii.  BACH also alleged that BACLP "published to prospective franchisees in the state of Hawaii certain defamatory statements reflecting materially upon the operations and reputation of the BACH franchise business in an adverse manner."[6]

BACH then filed a motion seeking a preliminary injunction enjoining BACLP from using the Trademark in Nevada.  In support of its motion, BACH relied on testimony presented in the preliminary injunction hearing relating to the use of the Trademark in Hawaii and an affidavit signed by BACH's president, Mike Bilanzich, stating that BACLP had not made any royalty payments or delivered monthly accountings pursuant to the Franchise Agreement since August 31, 1999.  BACLP filed a memorandum in support of its opposition to BACLP's motion, arguing, *inter alia*, that it submitted all franchise reports and royalty

---

[6]This allegation arose in connection with a letter signed by Jones and sent by BACLP to Bad Ass Coffee Company licensees in Hawaii which stated, "Our partnership owns the trademark in Hawaii, no amount of lies or unsigned lawyers [sic] letters will change that.  We will never provide you with counterfeit coffee at high prices as Mike Bilanzich as done in the past, and we will not run out on 100s of creditors and millions of dollars in debts as Mike as done.  We will not fail to register or pay our Hawaii GET taxes, forget to become qualified to do business in Hawaii, or sell franchises in violation of Hawaii laws."  This letter was part of the record from the Hawaii preliminary injunction hearing.

payments in a timely manner until August 31, 1999. It then argued, without any citation to authority, that it was relieved of any responsibility to continue tendering payments because BACH had improperly rejected some payments in an attempt to cause a breach of the Franchise Agreement. BACLP did not present any argument regarding BACH's allegation that BACLP had published defamatory statements that damaged the BACH franchise system.

The district court concluded that: (1) BACH would suffer irreparable harm unless BACLP was enjoined, (2) the balance of harms weighed in favor of granting the injunction, and (3) the injunction would not adversely affect the public interest. The court granted the injunction after further concluding that the evidence presented by BACH "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Bad Ass Coffee Co. of Haw., Inc. v. Bad Ass Coffee Ltd. P'ship*, No. 2:99-cv-00150, slip op. at 4 (D. Utah October 11, 2000); *see also Fed. Lands Legal Consortium*, 195 F.3d at 1194-95. The court stated, "[BACH] has presented evidence of several defaults by defendants under each of the relevant Nevada agreements."

On appeal, BACLP renews the argument it made before the district court that BACH improperly terminated the Franchise Agreement because BACLP was not in default. BACLP asserts that was justified in failing to tender royalty

payments after August 31, 1999 because BACH's rejection of earlier royalty payments was improper.  BACLP also argues, for the first time in this appeal, that the termination of the Franchise Agreement cannot be based on the letter sent to the Hawaii franchisees because the letter did not mention BACH and was not defamatory because the allegations made therein were true.  Finally, BACLP argues that the district court erred when it concluded that trademark infringement constitutes an irreparable harm.

We assume, without deciding, that the Franchise Agreement survived the termination of the MDAN and the TDAN and that the Franchise Agreement conferred on BACLP rights to use the Trademark in connection with its operation of the retail store in Las Vegas.  We have considered each of BACLP's remaining arguments and conclude that they are either unsupported by the record or relevant case law, or are waived because they were not presented to the district court.[7]  The record amply supports the district court's finding that BACH presented "substantial and largely uncontroverted evidence that all of [BACLP's] rights to use the Trademark in Nevada have been lawfully terminated."  BACLP has presented absolutely no evidence indicating that the district court's findings were clearly erroneous and has not shown that the district court committed any legal

---

[7]The argument section of BACLP's memorandum in support of its opposition to BACH's motion seeking the Nevada injunction was less than two pages long and did not contain a single citation.

error that would necessitate a reversal of the grant of the preliminary injunction. Accordingly, finding no reversible error in the district court's analysis, we **affirm** the grant of the preliminary injunction for substantially those reasons stated by the district court in its order dated October 11, 2000.

IV.   **CONCLUSION**

We **affirm** the confirmation of the arbitration award and the grant of attorney's fees to BACH, **affirm** the grant of the preliminary injunction enjoining BACLP from using the Trademark in Hawaii, and **affirm** the grant of the preliminary injunction enjoining BACLP from using the Trademark in Nevada.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge